## HESS v WEST BLOOMFIELD TOWNSHIP

Docket No. 90773. Argued December 5, 1991 (Calendar No. 10). Decided May 22, 1992.

In 1977, the Pine Bluff Estates Association petitioned the West Bloomfield Charter Township board for special permission to convert a commonly owned lot in the Pine Bluff Estates Subdivision fronting Pine Lake (outlot A) into a private park and beach, including construction of facilities to moor and dock boats. Approval was granted in 1978, including permission to provide for the mooring of two boats at the dock. In 1989, the association sought to amend the permit to increase the mooring capacity from two to eleven boats. After the board denied the petition to amend, Charles C. Hess and ten other backlot owners within the subdivision brought an action in the Oakland Circuit Court against the township and others, seeking to invalidate the regulation of docking privileges by the township board through the application of a zoning ordinance. The court, Robert L. Templin, J., granted partial summary disposition for the plaintiffs, determining that the board had acted without authority, but refused to certify the decision as a final order. The Court of Appeals, D. E. HOLBROOK, JR., P.J., and McDONALD and NEFF, JJ., denied an interlocutory appeal by the defendants (Docket No. 132634). The defendants appeal.

In an opinion by Justice BRICKLEY, joined by Chief Justice CAVANAGH, and Justices BOYLE, RILEY, GRIFFIN, and MALLETT, the Supreme Court *held:*

A township has the authority under the Township Rural Zoning Act to regulate riparian rights, such as the dockage of boats, as part of its zoning power.

1. The enabling provision of the Township Rural Zoning Act permits a township board to regulate by zoning ordinance land development and the establishment of districts that regulate the use of land and structures in order to ensure that the use

REFERENCES

Am Jur 2d, Waters §§ 51-53, 260-280, 388-391; Zoning and Planning §§ 46, 122.

See the Index to Annotations under Riparian and Littoral Ownership and Rights; Waters and Watercourses; Zoning.

of land is situated in appropriate locations and relationships. While the TRZA refers to land development and use of land within its enabling provision without expressly referring to water or riparian rights, it does not expressly prohibit the zoning of water-related uses of riparian rights. The term "land," as used in the enabling provision, when liberally construed in favor of the township, fairly implies the inclusion of boat dockage. Interpretation of the TRZA is aided by Const 1963, art 7, § 34, which provides that the powers granted to townships by the constitution and by law include those fairly implied and not prohibited by the constitution. This mandate must be employed in conjunction with the rule of statutory construction established by MCL 8.3; MSA 2.212 concerning interpretation of certain terms enumerated in statutes unless inconsistent with the manifest intent of the Legislature.

2. "Land," as defined by MCL 8.3i; MSA 2.212(9), includes all rights and interests that are associated with or attached to any piece of real property. Land bounded by a natural watercourse is defined as riparian, and riparian landowners enjoy certain exclusive rights, including the right to erect and maintain docks and the right to anchor boats permanently off the owner's shore. Thus, the term "land," as used within the TRZA, includes those rights or interests that attach to the ownership of land and extends to riparian rights, including the mooring of boats. In this case, outlot A clearly fits the definition of riparian property in that it is a piece of land that abuts a natural watercourse.

3. Including riparian rights within the term "land" as it is used in the TRZA is not inconsistent with the manifest intent of the Legislature. The TRZA permits townships to regulate activities to promote the general welfare of the public and to protect the character and natural resources of a township community, paramount concerns under the constitution. Regulation of riparian rights is necessary to ensure that land uses are compatible with surrounding properties and to conserve water resources. The TRZA allows townships to balance the most advantageous uses of the lands, resources, and properties within their boundaries and to create zoning districts and ordinances in accordance with such evaluations. Such a balance could not be achieved if riparian rights were excluded from any zoning control by the township.

Justice LEVIN, concurring separately, stated that the provision of the township zoning ordinance relied on by the township does not regulate riparian rights such as dockage of boats; rather, it regulates the use of land as a park for outdoor

recreation. Thus, the circuit court erred in concluding that the township was attempting to regulate boat dockage and that *Fox & Associates v Hayes Twp,* 162 Mich App 647 (1987), barred the township from denying the plaintiffs the special use permit.

Entirely apart from whether the TRZA authorizes a township to regulate water use or riparian rights, a township clearly has the authority under the act to regulate land use and to provide by zoning that use of land as a park for outdoor recreation is permitted only to the extent that it does not impair the natural appearance of the land or tend to produce unreasonable noise or annoyance to surrounding properties.

It is not appropriate for the Supreme Court to seek to decide, in a case where there is truly no issue regarding the authority of a township to regulate water use or riparian rights, the question whether the Legislature has delegated such authority to a township. The authority of a township to regulate riparian rights and docking of boats can be properly decided only in a case where the zoning provision at issue regulates riparian rights or the docking of boats and the validity of such a regulatory provision is truly at issue.

The Supreme Court should adhere to the principle underlying its refusal, after the parties resolved the controversy underlying *Fox & Associates,* to provide an advisory opinion regarding the law applicable in the factual situation there presented by declining to so opine in this case where the issue was not even presented.

While it may be reasonable to regulate land use with an eye to water use, especially where the entire body of water is completely within a township, different questions will arise where the water is bordered by land located in several townships and one township may not, as a practical matter, be able to regulate water use.

Local communities do not require an expansion of the zoning power to confront the need to control overuse of waters by backlot owners in funnel developments. The solution is for local communities, in the exercise of their power to zone land use, to proscribe the recreational use of lakefront property except for single family residences or multiple family residences with a density limitation determined on the basis of lake frontage.

Reversed.

ZONING — TOWNSHIP RURAL ZONING ACT — DOCKAGE.

A township has the authority under the Township Rural Zoning Act to regulate riparian rights, such as the dockage of boats, as part of its zoning power (MCL 125.271 *et seq.;* MSA 5.2963[1] *et seq.*).

*Robert H. Golden* for the plaintiffs.

*Kohl, Secrest, Wardle, Lynch, Clark & Hampton* (by *William P. Hampton* and *Gerald A. Fisher*) and *Cummings, McClorey, David & Acho, P.C.* (by *Carol Rosati*), for the defendants.

Amicus Curiae:

*Bauckham, Sparks, Rolfe & Thomsen, P.C.* (by *Lynda E. Thomsen* and *John H. Bauckham*), for Michigan Townships Association.

BRICKLEY, J. This case presents an opportunity for us to determine whether a township has the authority to regulate docking of boats pursuant to the Township Rural Zoning Act (TRZA). MCL 125.271 *et seq.*; MSA 5.2963(1) *et seq.* Contrary to the opinion of the Court of Appeals in *Fox & Associates, Inc v Hayes Twp*, 162 Mich App 647; 413 NW2d 465 (1987), we find that the TRZA does in fact vest townships with such authority, and reverse the decision of the trial court, and remand this case for further proceedings consistent with our decision.

I. FACTUAL BACKGROUND

On August 30, 1977, Pine Bluff Estates Association[1] filed a petition with the West Bloomfield Charter Township Board for approval of a site plan and for a special use permit for a commonly owned lot, hereinafter referred to as outlot A, within the Pine Bluff Estates Subdivision. The association was seeking to convert this pie-shaped lot which abuts Pine Lake, into a private park and

[1] The association represents all twenty-two lot owners within the subdivision. The individual plaintiffs involved in this case are only the backlot owners of the subdivision.

beach for its members' use. The petition was filed
by the association in accordance with the require-
ments of the West Bloomfield Charter Township
Zoning Ordinance. Neither the necessity nor the
authority under the zoning ordinance for the spe-
cial use permit for docking privileges at outlot A
has been questioned by the parties.[2]

[2] Site plan approval of outlot A was required pursuant to the then
existing West Bloomfield Township Zoning Ordinance. That provision
provides:

The following uses *may be permitted in an R-10, R-12.5 and
R-15 one-family residential district after review and approval* of
the site plan by the planning commission *and* provided that the
planning commission *finds that the use would not be incompati-
ble with already existing uses in the area* or would not inter-
fere with orderly development of the area and will not be
detrimental to the safety or convenience of vehicular or pedes-
trian traffic, subject to the conditions imposed for each use, *and
subject to final approval by the township board:*

\* \* \*

(4) Land may be used for *privately owned and operated
parks,* picnic groves or similar facilities for outdoor recreation
which may not be operated for profit; *provided, that such use
does not impair the natural appearance of such land and tend to
produce unreasonable noise or annoyance to surrounding prop-
erties,* and provided further that no use shall be made of any
open land or water for boat liveries or commercial bathing
beaches. [Section 26-73. Emphasis added.]

The special use permit was required for outlot A, pursuant to the
zoning ordinance, since it only had fifty-eight feet of frontage on Pine
Lake and docking privileges were desired.

Where a *parcel of land contiguous to a body of water* is
presented for subdividing, *a recreational park bordering on the
body of water* may be dedicated for the purposes of swimming
and picnicking, the privileges of which are to be reasonably
enjoyed by the owners and occupants of lots included in any
plat or plats recorded within the parcel and only such owners
and occupants provided that the recreational park is dedicated
at the time for the use of owners and occupants of lots con-
tained in such a recorded plat or plats *at least twenty (20)
lineal feet of water frontage and one hundred fifty (150) feet in
depth shall be reserved therein for the rights of each lot of the
size required by this chapter;* provided, however, that no recre-
ational park so *created shall have less than three hundred
(300) feet of water frontage. The launching of boats from*

On April 11, 1978, the planning commission recommended the board approve the site plan and special use permit for outlot A.[3] The commission indicated that the dimensions of outlot A were not in conformance with the requirements of the zoning ordinance regarding subdivision recreational parcels of land with lake frontage; however, it determined that the association should be allowed to improve outlot A as long as any dock constructed on that lot was not used to launch or moor boats.

On June 19, 1978, the board granted the approval for the site plan and special use permit. However, the board, contrary to the recommendation of the commission, allowed two boats to be moored at the dock.

The boat restriction was acceptable to plaintiffs because few of the backlots within the subdivision had been developed at that time.[4] However, on June 12, 1989, after all eleven of the backlots had been developed, the association submitted a petition to amend the special use permit for outlot A to increase mooring capacity of the dock from two to eleven boats. On July 25, 1989, the commission issued a recommendation to the board that the petition filed by the association should be denied because such use would not conform to the re-

*recreational parks shall not be permitted nor shall boats be allowed to be docked at recreational parks.* [Section 26-78. Emphasis added.]

The format of the township zoning ordinance was changed on June 21, 1982; however, the language of the relevant zoning ordinance provisions was not altered.

[3] The commission also made an analysis of the need for a wetland permit to be obtained by the association. This issue is no longer relevant since the dock which was eventually created was fifty feet in length, which falls within an exemption to the wetland ordinance requirement.

[4] The special use permit did not affect the ability of the eleven lots with frontage upon Pine Lake to moor boats at their own docks.

quirements of the West Bloomfield Township Zoning Ordinance. On October 16, 1989, the board adopted the recommendation of the commission and denied the petition, despite being informed of the Court of Appeals decision in *Fox, supra,* which had held that the TRZA does not vest authority to regulate docking upon township governmental units.

On November 3, 1989, plaintiffs filed a six-count complaint in the Oakland Circuit Court. Plaintiffs were attempting to have the court invalidate regulation of the docking privileges as exercised by the board with regard to outlot A. The first count, relying upon *Fox, supra,* asserted the zoning regulation employed by the board was invalid because there was no authority for regulating the docking of boats through the application of a zoning ordinance. Counts II through VI included: a claim for mandamus to require the board to accept the petition for a variance, a complaint for superintending control to reverse the decision of the board, an appeal from the decision of the board, a claim for inverse condemnation, and an allegation of a violation of 42 USC 1983, respectively.

Plaintiff brought a motion for partial summary disposition with regard to counts I and IV, relying on the decision in *Fox.* Plaintiffs alleged that there was no question of material fact in this case and that they were entitled to judgment as a matter of law with regard to count I, pursuant to MCR 2.116(C)(10). After hearing oral arguments regarding this issue on May 18, 1990, the trial court, relying upon *Fox,* determined that the board had acted without authority in regulating the mooring of boats at outlot A.[5] The trial court refused to

___

[5] In light of the court's granting summary disposition with regard to count I, both parties stipulated that the issue raised in count IV was moot. Accordingly, that issue is not presented for review by this

certify the decision as a final order; therefore, defendants filed an interlocutory appeal in the Court of Appeals which was denied on December 20, 1990.[6] Defendants' application for leave to appeal to this Court was granted. 437 Mich 1047 (1991).

II

In *Square Lake Hills Condominium Ass'n v Bloomfield Twp,* 437 Mich 310; 471 NW2d 321 (1991), a majority of this Court, albeit by more than one opinion, determined that townships possess authority to regulate mooring of boats by ordinance, pursuant to the police power provided by the township ordinance act, MCL 41.181 *et seq.*; MSA 5.45(1) *et seq.* In this case, however, defendant West Bloomfield Township enacted the relevant zoning provisions in accordance with the statutory requirements of the TRZA. Therefore, our only consideration is whether the enabling provision of that act vested the township with authority to regulate the construction of a dock and the ability to limit the number of boats that could be moored there.

The enabling provision of the TRZA states:

The *township board* of an organized township in this state *may provide by zoning ordinance for the regulation of land development and the establishment of districts in the portions of the township* outside the limits of cities and villages *which*

Court. Additionally, we do not address the validity of the other counts raised in plaintiff's complaint because they were not raised on appeal in this Court.

[6] The plaintiffs alleged preëmption by the actions of the Department of Natural Resources, for the first time, in their responsive brief filed with the Court of Appeals. That issue was not preserved for review by this Court because it was not raised in the trial court. See *Napier v Jacobs,* 429 Mich 222; 414 NW2d 862 (1987).

*regulate the use of land and structures;* to meet the needs of the state's citizens for food, fiber, energy, and other natural resources, places of residence, recreation, industry, trade, service, and other uses of land; *to insure that use of the land shall be situated in appropriate locations and relationships;* to limit the inappropriate overcrowding of land and congestion of population, transportation systems, and other public facilities; to facilitate adequate and efficient provision for transportation systems, sewage disposal, water, energy, education, recreation, and other public service and facility requirements; and to promote public health, safety, and welfare. For these purposes, the township board may divide the township into districts of such number, shape, and area as it considers best suited to carry out this act. The township board of an organized township may use this act to provide by ordinance for the regulation of land development and the establishment of districts which apply only to land areas and activities which are involved in a special program to achieve specific land management objectives and avert or solve specific land use problems, including the regulation of land development and the establishment of districts in areas subject to damage from flooding or beach erosion, and for that purpose may divide the township into districts of a number, shape, and area considered best suited to accomplish those objectives. [MCL 125.271; MSA 5.2963(1). Emphasis added.]

A

In *Fox, supra,* the Court of Appeals found the enabling provision of the TRZA to be limited to regulation of land activities "and does not extend to the regulation of the riparian rights of a landowner, especially when such regulation attempts to limit access to navigable waters or the number of dock slips a riparian landowner may build or

possess." *Id.* at 652. That case presented a situation in which a proposed condominium development, which had frontage on Lake Charlevoix, was rejected because of nonconformance with the applicable zoning ordinances. The zoning ordinances involved in that case regulated the building of structures along the shoreline and also the amount of dock space which would have been available to the condominium owners. The Court of Appeals held that the Legislature did not intend to allow such zoning regulation to be exercised by townships, pursuant to the TRZA, because the language within that act was limited to land use or development and did not mention water activity or riparian rights. The panel employed this interpretation of the TRZA despite a constitutional mandate of liberal construction in favor of the township.

> Even with the liberal construction of the provisions of the constitution in mind, we do not believe that the TRZA grants authority to townships to regulate or limit boat dockage construction or riparian access rights. After consideration of all the applicable rules of statutory construction, we can only conclude that the Legislature, in enacting the TRZA, granted authority to townships to zone land use but not water use or to regulate riparian rights. [*Id.* at 656.]

The dissenter opined that the TRZA should not have been given as narrow an interpretation as that adopted by the majority, especially in light of the constitutional mandate.

> In summary, riparian rights are not different from any other rights that arise out of the ownership or an estate in land. Consequently those rights are subject to the regulation and control of the township under the authority of the Township Rural Zoning Act. [*Id.* at 662.]

We granted leave to appeal in *Fox,* on
March 22, 1988. See 430 Mich 858. Our order
granting leave indicated that the limited issue to
be addressed was "whether under the Township
Rural Zoning Act . . . a township has the author-
ity to enact a zoning ordinance which limits boat
dockage and funnel development by riparian own-
ers." That issue was almost identical to the issue
before us today, and would likely have eliminated
any need for us to review the instant case. How-
ever, we vacated our order granting leave to ap-
peal in *Fox* on July 19, 1989, after the parties
agreed to a consent judgment. 432 Mich 932.

B

The TRZA makes express references to "land
development" and "use of land" within its en-
abling provision without expressly referring to
water or riparian rights. However, that provision
also does not expressly prohibit the zoning of
water-related uses or riparian rights.

The question becomes whether the term "land,"
as used in the enabling provision of the TRZA when
"liberally construed" in favor of the township,
"fairly impl[ies]" the inclusion of boat dockage.
For the reasons that follow we think that it does.

III

Interpretation of the TRZA is aided by Const
1963, art 7, § 34, which provides:

The provisions of this constitution and law con-
cerning counties, townships, cities and villages
shall be liberally construed in their favor. *Powers
granted to* counties and *townships* by this constitu-
tion and *by law shall include those fairly implied*

*and not prohibited by this constitution.* [Emphasis added.]

We must employ this constitutional mandate in conjunction with the following statutory rule of construction in our interpretation of the enabling provision of the TRZA.

MCL 8.3; MSA 2.212, establishes a statutory rule of construction for interpreting certain enumerated terms found within various statutory provisions.

> In the construction of the statutes of this state, the rules stated in sections 3a to 3w shall be observed, *unless* such construction would be inconsistent with the manifest intent of the legislature. [Emphasis added.]

A statutory definition for the term "land" is included within MCL 8.3i; MSA 2.212(9), which provides:

> The words "land," "lands," "real estate" and "real property" mean lands, tenements and real estate, *and all rights thereto and interests therein.* [Emphasis added.]

Accordingly, the statutory definition of land within this provision includes all rights and interests which are associated or attached to any piece of real property.

### A

> *Land which includes or is bounded by a natural watercourse is defined as riparian.* Persons who own an estate or have a possessory interest in riparian land enjoy certain exclusive rights. These include the right to erect and maintain docks along the owner's shore, and the right to anchor

boats permanently off the owner's shore. [*Thies v Howland,* 424 Mich 282, 287-288; 380 NW2d 463 (1985). Citations omitted. Emphasis added.]

Outlot A clearly fits the definition of riparian property since it is a piece of land which abuts a natural watercourse, Pine Lake.[7] Riparian rights are derived from and are dependent on ownership of "land" which abuts a natural body of water; thus, they constitute part of the property possessed by riparian landowners and become their property rights. See *Square Lake Hills, supra* (CAVANAGH, C.J., dissenting); *Thompson v Enz,* 379 Mich 667; 154 NW2d 473 (1967).

Therefore, we conclude that the term "land," as used within the TRZA, includes those rights or interests that attach to the ownership of land, which extends to riparian rights. Mooring of boats at a dock adjacent to outlot A constitutes an exercise of the riparian rights of the property owners of that piece of property.

B

Including riparian rights within the term "land" as it is used in the TRZA is not "inconsistent with the manifest intent of the legislature." The Legislature indicated its intentions in adopting the TRZA.

The zoning ordinance shall be *based upon a plan designed to promote the public health, safety, and general welfare; to encourage the use of lands in accordance with their character and adaptability,*

---

[7] We note that each member of the association is considered to possess an undivided ½2 ownership interest in outlot A. This interest is not severable or alienable from the ownership of the primary lot within the subdivision, therefore we consider the undivided ½2 interest ownership of outlot A sufficient to permit the relevant riparian rights to attach to each member.

*and to limit the improper use of land;* to conserve
natural resources and energy; . . . *to insure that
uses of the land shall be situated in appropriate
locations and relationships;* . . . and to conserve
the expenditure of funds for public improvements
and services to conform with the most advanta-
geous uses of land, resources, and properties. The
zoning ordinance shall be made with reasonable
consideration, among other things, to the charac-
ter of each district; its peculiar suitability for
particular uses; the conservation of property val-
ues and natural resources; *and the general and
appropriate trend and character of land, building,
and population development.* [MCL 125.273; MSA
5.2963(3). Emphasis added.]

This provision was broadly written to permit
townships to regulate activities to promote the
general welfare of the public and to protect the
character and natural resources of a township
community. In order to accomplish this goal, the
Legislature must have been aware of the impor-
tance of riparian rights with regard to the overall
use of land. In a state such as Michigan, with its
abundant bodies of water, there would be no way
to ensure that land uses are compatible with sur-
rounding properties unless water activities are
evaluated. Similarly, the conservation of natural
resources, which clearly includes water, cannot be
undertaken if there is no means for regulating
riparian rights. Finally, the stated purpose of the
TRZA is to allow townships to balance the most
advantageous uses of the lands, resources, and
properties within their boundaries and to create
zoning districts and ordinances in accordance with
such evaluations. Such a balance could not be
achieved if riparian rights are excluded from any
zoning control by the township.

Review of the historical development of the TRZA
indicates the Legislature intended the regulatory

authority possessed by the townships to encompass more than activities which are located on "dry land."

The original version of the TRZA was enacted in 1943 PA 184. The first sentence in the first section of that act provided the authority for townships to designate zoning districts in which they could encourage, regulate, or prohibit certain types of activities or uses of the land within the zoning districts created, i.e., agricultural, forestry, recreational, residential, etc. The remainder of that section addressed regulation of dwellings or structure sizes within the zoning districts created by the township. There was minimal discussion of the authority of townships to control land development within the several zoning classifications. In 1978, the Legislature drastically amended this crucial provision of the TRZA to address and correct the inadequacy of the prior version.[8]

An indication of the legislative concern for the environment is apparent from the clause that was added to MCL 125.271; MSA 5.2963(1) in 1978, providing that townships shall have the authority to enact zoning ordinances to "promote public health, safety, and welfare." This indicates that a much broader grant of authority was intended by the Legislature when it amended the TRZA in 1978. Additionally, the constitution states that conservation and protection of natural resources shall constitute a paramount concern in the interest of the health, safety, and general welfare of the people of the State of Michigan.

> The conservation and development of the natural resources of the state are hereby declared to be

---

[8] The amended version has remained unaltered since it was adopted in 1978 PA 637 and is currently compiled at MCL 125.271; MSA 5.2963(1).

of *paramount public concern in the interest of the
health, safety and general welfare of the people.
The legislature shall provide for the protection of
the air, water and other natural resources of the
state from pollution, impairment and destruction.*
[Const 1963, art 4, § 52. Emphasis added.]

Thus, by granting townships the authority to promote the public health, safety, and general welfare through enactment of zoning ordinances, the Legislature was complying with this constitutional mandate to protect the environment, including bodies of water, from impairment or destruction.

In order for townships to properly protect the bodies of water from destruction or impairment, pursuant to their zoning power within the TRZA, there must be an ability to regulate the exercise of riparian rights. To prohibit townships from exercising such regulatory zoning authority over riparian rights would permit the destruction or impairment of the natural resources associated with such bodies of water. To construe the TRZA in the manner asserted by plaintiffs, and the Court of Appeals majority in *Fox, supra,* would essentially prohibit townships from protecting the natural resources located within their communities that happen to be associated with bodies of water. This clearly could not have been the intention of the Legislature when it expanded the powers of the townships to regulate land development and to promote the public health, safety, and welfare, pursuant to the zoning authority of the TRZA. Therefore, our reading of the TRZA is not only not "inconsistent with the minifest intent of the legislature," it is manifestly consistent with it.

### IV. CONCLUSION

We conclude that the TRZA permits townships to

regulate riparian rights, such as dockage of boats, as part of their zoning power. This interpretation is consistent with the underlying purpose of the enactment of the TRZA and its subsequent amendment, and is appropriate in light of the constitutionally mandated liberal construction. We reverse the trial court's grant of summary disposition and remand for further proceedings consistent with this opinion.

CAVANAGH, C.J., and BOYLE, RILEY, GRIFFIN, and MALLETT, JJ., concurred with BRICKLEY, J.

LEVIN, J. (*concurring separately*). The majority declares that the Township Rural Zoning Act[1] "permits townships to regulate riparian rights, such as dockage of boats, as part of their zoning power."[2]

The majority so declares although the provision[3] of the West Bloomfield Charter Township Zoning Ordinance here at issue does not—as West Bloom-

_____

[1] MCL 125.271 *et seq.*; MSA 5.2963(1) *et seq.*

[2] *Ante,* pp 565-566.

[3] "The following uses *may be permitted in an R-10, R-12.5 and R-15 one-family residential district after review and approval of* the site plan by the planning commission *and* provided that the planning commission *finds that the use would not be incompatible with already existing uses in the area* or would not interfere with orderly development of the area and will not be detrimental to the safety or convenience of vehicular or pedestrian traffic, subject to the conditions imposed for each use, *and subject to final approval by the township board:*

＊　＊　＊

"(4) Land may be used for *privately owned and operated parks,* picnic groves or similar facilities for outdoor recreation which may not be operated for profit; *provided, that such use does not impair the natural appearance of such land or tend to produce unreasonable noise or annoyance to surrounding properties,* and provided further that no use shall be made of any open land or water for boat liveries or commercial bathing beaches. [Section 26-73.]" [*Ante,* p 554, n 2. Emphasis in opinion of the Court.]

field acknowledged, indeed stressed, in the circuit court—"regulate riparian rights."

Outlot A, the land in issue, fronts on Pine Lake. The plaintiffs did indeed apply for a special use permit to dock and launch boats from outlot A. But the provision of the zoning ordinance here at issue does not, either in terms or in substance, seek to regulate the use of lake frontage or use of the lake. The provision regulates, rather, the use of land—without regard to whether it fronts on a lake—as a park for outdoor recreation, stating that the township board may authorize use of land, such as outlot A, as a park for outdoor recreation on a finding that such use would not be "incompatible with already existing uses in the area" and, in particular, " 'that such use does not impair the natural appearance of such land or tend to produce unreasonable noise or annoyance to surrounding properties.' "[4]

Under this provision of its zoning ordinance, the only provision here at issue, West Bloomfield denied plaintiffs a special use permit to increase from two to eleven the number of boats that might be docked at outlot A. That denial of a special use permit was in accordance with the terms of the ordinance if such use would in fact have impaired the natural appearance of outlot A or have tended to produce unreasonable noise or annoyance to surrounding properties.

The majority reverses the order of summary disposition for the plaintiffs entered by the circuit court and remands for further proceedings consistent with the opinion of the Court. I agree with this disposition, and suggest that an issue on remand might be whether the special use sought by the plaintiffs would in fact impair the natural

_____
[4] Id.

appearance of outlot A or tend to produce unreasonable noise or annoyance to surrounding properties.

I write separately to express my disagreement with the majority's decision to declare whether a township has the authority to regulate riparian rights or the docking of boats pursuant to the TRZA in a case where the zoning ordinance provision at issue does not purport to regulate riparian rights or the docking of boats.

I

The circuit court, in granting Hess' motion for partial summary disposition, declared that West Bloomfield's zoning ordinance was invalid "insofar as it purports to regulate dock construction and boat dockage." The judge based his ruling on the decision of the Court of Appeals in *Fox & Associates, Inc v Hayes Twp*, 162 Mich App 647; 413 NW2d 465 (1987), which the judge said was "controlling." He said that the Court of Appeals there held that "Hayes Township had no authority under the TRZA to regulate dock construction and boat dockage through its zoning ordinance."[5] The Court of Appeals denied leave to appeal.

I concur in reversal of the circuit court. I would, however, reverse on the basis that the circuit

---

[5] He also quoted the following passage in the opinion of the Court of Appeals:

Even with the liberal construction of the provisions of the constitution in mind, we do not believe that the TRZA grants authority to townships to regulate or limit boat dockage construction or riparian access rights. After consideration of all the applicable rules of statutory construction, we can only conclude that the Legislature, in enacting the TRZA, granted authority to townships to zone land use but not water use or to regulate riparian rights. [*Fox & Associates v Hayes Twp, supra,* p 656.]

court erred in concluding, first, that West Bloom-
field was "attempting to regulate boat dockage"
under the provision of its zoning ordinance here
relied on, requiring a special use permit to use
land as a park for outdoor recreation, and, second,
that *Fox & Associates* barred West Bloomfield
from denying plaintiffs a special use permit to
increase from two to eleven the number of boats
docked at outlot A.

I thus agree with the position advocated by West
Bloomfield in the circuit court, where West Bloom-
field argued that the ordinance involved in *Fox &
Associates* "attempted to regulate water. use
rights. *That's not what we have in this case."*
(Emphasis added.)

West Bloomfield further argued that when the
plaintiffs sought permission to increase the num-
ber of boats that could be docked at outlot A, the
issue under the pertinent provision of its zoning
ordinance was whether the proposed increased use
of outlot A was reasonable in a residential area,
and whether, as set forth in the ordinance,[6] "the
use of the land was going to tend to produce
*unreasonable noise and annoyance* to neighbors.
Very simple, very simple, *if you remove the water
context,* this kind of administrative issue comes up
every month at a normal Township proceeding. Is
the use of this property going to be interfering
with adjoining property."[7] (Emphasis added.)

---

[6] See n 3.

[7] West Bloomfield further argued:

In this case we happen to have a lake next door or adjoining
the property.

\* \* \*

And the question before the Township is just what can be
done on this out lot as a recreational piece of property, *not as a
boat issue.* It's not a situation like in *Fox* where they're saying
how many boats can you have, how many docks can you put in,

Disposition of this appeal does not require or justify addressing the issue decided by the Court of Appeals in *Fox & Associates.* All that need be said to decide this appeal is that, first, entirely apart from whether *Fox & Associates* correctly ruled that the TRZA does not authorize a township to regulate water use or riparian rights, a township has the authority under the TRZA to regulate land use, and thus to permit the use of land as a park for outdoor recreation only to the extent that such use does not either impair the natural appearance of the land or tend to produce unreasonable noise or annoyance to surrounding properties. And, second, that the circuit court erred in ruling that the Court of Appeals decided in *Fox & Associates* that the TRZA proscribes regulation of land use that affects in any way "dock construction and boat dockage."

II

It is not appropriate for this Court to seek to decide in this case, where there truly is no issue regarding the authority of a township to regulate water use or riparian rights, the question whether the Legislature has delegated such authority to a township under the TRZA. The authority of a township to regulate riparian rights and docking of boats properly can be decided only in a case where the zoning provision at issue regulates riparian rights or the docking of boats and the validity of such a regulatory provision is truly at issue.

---

period. The question is how can you use this recreational piece of land.

\* \* \*

So it's completely distinguishable from *Fox* because it's not a matter of how are you going to regulate the water. It's a matter of how you're going to regulate the land and using this water use thing as a tool or a measure. [Emphasis added.]

To be sure, West Bloomfield, by denying a special use permit to increase from two to eleven the number of boats that might be docked at outlot A, did seek to regulate the docking of boats at outlot A. But it asserted the authority to do so *not* on the basis that it had the right under the TRZA to regulate water use or riparian rights, but on the basis that it had the right to regulate the use of the land at which the dock was sited so that any increase in the number of boats docked would neither impair the natural appearance of the land nor tend to produce unreasonable noise or annoyance to surrounding properties.

While it may be of little importance to the plaintiffs here whether they are denied an increase in boat dockage on one basis or the other, in another case it might be of considerable importance whether a township may, under the TRZA, regulate a riparian owner's use of the water or the docking or launching of boats irrespective of whether such use might, in a recreational park setting, result in unreasonable noise or annoyance to surrounding properties.

### III

This Court, first in *Square Lake Hills Condominium Ass'n v Bloomfield Twp,* 437 Mich 310; 471 NW2d 321 (1991), and now in this case, has been striving to address the question whether *Fox & Associates* was correctly decided. That the issue has not been squarely presented in either case may be frustrating, but does not justify departure from the norms of decision making.

After the parties resolved the controversy underlying *Fox & Associates,* this Court declined to provide an advisory opinion regarding the law applicable in the factual situation presented in

that case.[8] This Court should adhere to the principle underlying its refusal to render such an opinion in *Fox & Associates,* by declining to render such an opinion in a case that does not even present the issue there presented.

IV

It appears that West Bloomfield is largely a developed community. Any zoning of water use or riparian rights by West Bloomfield would most often affect land that has been subdivided and intensively developed and used for some time. Any effort to rezone against existing uses would confront the rights of persons who then would become nonconforming users.

While it may be reasonable to regulate land use with an eye to water use, especially where the entire body of water lies, as in the instant case, within a single township, different questions will arise where the water is bordered by land located in several townships, as in *Fox & Associates.*[9] Where several townships border the water, one township may not, as a practical matter, be able effectively to regulate water use.[10] This would im-

---

[8] On July 19, 1989, this Court entered an order, after briefing and oral argument in this Court, vacating its earlier order granting leave to appeal in *Fox & Associates.* The order stated that "in light of the proposed consent judgment agreed to by the parties, leave to appeal is denied because the Court is no longer persuaded that it should review the questions presented." Two justices, in a separate statement, said that they "would retain the appeal for plenary consideration." 432 Mich 932 (1989).

[9] Lake Charlevoix is bordered by three or more townships and three cities or villages.

[10] The majority therefore overstates the matter when it writes:

Similarly, the conservation of natural resources, which clearly includes water, *cannot* be undertaken if there is no means for regulating riparian rights. Finally, the stated purpose of the TRZA is to allow townships to balance the most

plicate the power of the state to regulate water use and plaintiffs' claim that the state has preëmpted the regulation of water use and riparian rights.[11]

## V

It is asserted that there is a need to recognize a power in townships to regulate water use and riparian rights to provide a means for controlling overuse of lakes by backlot owners in funnel developments. The asserted need arises where a township's zoning ordinance permits[12] the use of lakefront land for a use other than single or multiple family residences fronting on the lake.

Where, however, township zoning does not in effect permit the recreational use of lakefront land

---

advantageous uses of the lands, resources, and properties within their boundaries and to create zoning districts and ordinances in accordance with such evaluations. Such a balance *could not* be achieved if riparian rights are excluded from any zoning control by the township. [Emphasis added. *Ante*, p 563.]

While such a "balance" might be achieved if the Legislature were to grant townships authority to zone respecting riparian rights where the entire body of water is located in a single township, such balance probably cannot be achieved by recognizing or delegating such authority to townships where the entire body of water is, as in the case of Lake Charlevoix, bordered by three cities or villages and at least three townships.

[11] The Legislature has enacted a number of laws to protect and preserve the state's natural resources, including water.

Those acts include the Natural River Act, MCL 281.761 *et seq.*; MSA 11.501 *et seq.*; the Soil Erosion and Sedimentation Control Act, MCL 282.101 *et seq.*; MSA 13.1820(1) *et seq.*; the Wilderness and Natural Areas Act, MCL 322.751 *et. seq.*; MSA 13.734(1) *et seq.*; the Inland Lakes and Streams Act, MCL 281.951 *et seq.*; MSA 11.475(1) *et seq.*; the Shorelands Protection and Management Act, MCL 281.631 *et seq.*; MSA 13.1831 *et seq.*; the Environmental Protection Act, MCL 691.1201 *et seq.*; MSA 14.528(201) *et seq.*; the Farmland and Open Space Preservation Act, MCL 554.701 *et seq.*; MSA 26.1287(1) *et seq.*; the Sand Dune Protection and Management Act, MCL 281.651 *et seq.*; MSA 18.595(1) *et seq.*; and the Wetland Protection Act, MCL 281.701 *et seq.*; MSA 18.595(51) *et seq.*

[12] In *Fox & Associates*, pursuant to a planned unit development.

by persons who are not the owners of single or multiple family residences fronting on the lake, a township may not need an expansive construction of the zoning power to prevent overuse resulting from funnel development. Townships, in the exercise of their undoubted power to zone land use, might proscribe for future subdivisions the use of lakefront land except for single family residences or, possibly, multiple family residences with a family density limitation[13] based on lakefront footage.[14]

[13] In contrast with a boat-dockage limitation.

The limitations in the zoning ordinance involved in *Fox & Associates* are set forth in Judge McDONALD's dissenting opinion in *Fox & Associates, supra,* p 657.

[14] The majority again overstates the matter when it writes that townships "must" have the ability to regulate the exercise of riparian rights, and that to deny them such authority would permit the destruction or impairment of natural resources:

In order for townships to properly protect the bodies of water from destruction or impairment, pursuant to their zoning power within the TRZA, there must be an ability to regulate the exercise of riparian rights. To prohibit townships from exercising such regulatory zoning authority over riparian rights would permit the destruction or impairment of the natural resources associated with such bodies of water. To construe the TRZA in the manner asserted by plaintiffs, and the Court of Appeals majority in *Fox, supra,* would essentially prohibit townships from protecting the natural resources located within their communities that happen to be associated with bodies of water. [*Ante,* p 565.]

The majority's statement ignores the legislation concerning the use of inland waters (see n 11) and the power of the Legislature to enact additional legislation as may be thought necessary to protect the natural resources associated with bodies of water.

The majority goes even further when it appears to constitutionalize the power of townships to protect the environment:

Thus, by granting townships the authority to promote the public health, safety, and general welfare through enactment of zoning ordinances, the Legislature *was complying with this constitutional mandate* to protect the environment, including bodies of water, from impairment or destruction. [*Ante,* p 565. Emphasis added.]

As set forth in *Square Lake, supra,* p 335, and to that extent I there agreed with the majority, " 'townships have the authority to regulate boat docking and launching for the protection of the health, safety, and welfare of persons and property within their communities under the township ordinance act,' "[15] even though they may not have such power under the TRZA. I suggested that "[a] township could, accordingly, appropriately enact, under the township ordinance act, a regulation barring the docking of motorboats in an unsafe or hazardous manner, or the launching of motorboats during usual sleeping hours." *Id.*

In sum, there is neither need nor justification for addressing a fundamental question of water and zoning law in a case where the issue is not truly presented.

[15] MCL 41.181; MSA 5.45(1).