# STATE OF MICHIGAN

# COURT OF APPEALS

---

JAMES McEWEN and BARBARA McEWEN,

Plaintiffs-Appellants,

v

JOHN GUTHRIE, RICHARD ELLIS, SUSAN
HANSEN, STEVEN HANSEN, DEBORAH
PALAMAR, BRUCE LINDSTROM, DUSTIN
LINDSTROM, BRUCE SABUDA, JOHN
RUTHVEN, IRENE RUTHVEN, RONALD
KOZLOWSKI, JOAN BROWN TRUST, DUANE
FREESE, LISA FREESE, DONITA
CUNNINGHAM, GARY BROWN, EVELYN
GREGORY, SANDRA JOHNSTON, LARRY
STANGE, KATHLEEN STANGE, WILLIAM
HOYE, PAMELA HOYE, RONALD FIELD,
JOHN MUSHINSKI, DAWN MUSHINSKI,
CHAD WILSON, KAREN D. WHITT TRUST,
JEROME CUTSINGER, VERNON REGEHR,
DIANNE REGEHR, EDDIE COLLINS,
SHARON COLLINS, KATHLEEN DEHETRE,
WESLEY MAUS, KATHRYN HEYWOOD,
ELITA AND DEBRA BORDERS TRUST,
BRIAN HUGHES, LORI HUGHES, SCOTT
COOPER, LINDA COOPER, MATTHEW
BORDERS, PAMELA SIMMONS, JEANNINE
MEITZ, JOHN MEITZ, and MARTIN E.
WAGNER TRUST,

Defendants-Appellees.

UNPUBLISHED
May 23, 2017

No. 331845
Livingston Circuit Court
LC No. 2014-028204-CH

---

Before: GADOLA, P.J., and JANSEN and SAAD, JJ.

PER CURIAM.

Plaintiffs appeal as of right from a declaratory judgment, issued after a bench trial, holding that defendants had a right to install, maintain, and use a dock in the subject subdivision

-1-

under the language of their deeds and the plat dedication, as well as by prescriptive easement. For the reasons discussed below, we affirm.

## I. FACTS AND LOWER COURT PROCEEDINGS

All parties to the instant appeal own property in Kaiser's Patterson Lake subdivision on or near Patterson Lake ("the lake"). Plaintiffs own a lot abutting the lake at the end of Lakeview Drive. Defendants are the owners of backlots, or lots without lake frontage, along Lakeview Drive, Park Drive, or Pleasant Drive, the three streets in the subdivision running perpendicular to and ending at the edge of the lake. It is undisputed that plaintiffs had riparian rights[1] pursuant to their deed, and that an easement provision in the subdivision plat providing that "the streets and alleys as shown on said plat are hereby dedicated to the use of the lot owners," granted defendants the right to use Lakeview Drive, Park Drive, and Pleasant Drive, up to the road ends at the edge of the lake.

At issue here is the presence of a dock, apparently installed by a non-party previous backlot owner and seasonally reassembled by defendants, at the end of Lakeview Drive. Plaintiffs concede that the dock had been periodically installed for more than 10 years by the time they purchased the lot next to the end of Lakeview Drive in 2006, and was unobjectionable until it became, in the past several years, "poorly maintained and heavily used." In August, 2014, plaintiffs filed a complaint seeking to enjoin the installation of the dock and the mooring of boats at the Lakeview Drive road end. Plaintiffs argued that while language in the subdivision plat and defendants' deeds created an easement for defendants to access the lake, they did not create a right to maintain a dock or moor boats at the road end. In response, defendants claimed that the common dock had been seasonally installed at the Lakeview Drive road end since the 1950s. Defendants argued that their use of the road end was consistent with the easement language or, in the alternative, established a prescriptive easement.

After a bench trial, the trial court concluded that the easement language unquestionably granted defendants a right to access the road and the lake through the road ends. The trial court then found that under Michigan law, the right to access the lake included a commensurate right to build a wharf or a dock for daytime docking or mooring of boats. Further, the trial court found that the evidence presented proved that the backlot owners had maintained a dock at the Lakeview Drive road end since the 1940s for the purpose of overnight, permanent boat docking. The court concluded that this use was inconsistent with defendants' rights under the easement, and defendants had thus established a prescriptive easement. The court issued a declaratory judgment ordering that all lot owners held an easement for installation and maintenance of seasonal docks at the road ends, as well as for the use, access, and storage of boats at the docks.

---

[1] Technically, the applicable rights would be "littoral" rather than "riparian," because their property abuts a lake, and not a river. However, courts and parties frequently use the term "riparian" to describe access to any waterbody, and the two terms are today functionally synonyms. See *2000 Baum Family Trust v Babel*, 488 Mich 136, 138 n 1; 793 NW2d 633 (2010).

II. DEFENDANTS' RIGHT OF ACCESS UNDER THE EASEMENT LANGUAGE

On appeal, plaintiffs argue that the trial court erred when it considered extrinsic evidence to find an ambiguity in the easement language when it determined that the easement language created a right to install a dock at the subdivision road end. Plaintiffs do not dispute that language in the plat providing "that the streets and alleys as shown on said plat are hereby dedicated to the use of the lot owners," along with language in the parties' individual property deeds, granted defendants, and all back lot owners a right of way to the lake via the road ends, and access to the lake as nonriparian owners. However, plaintiffs contend that the trial court erred when it looked beyond the clear and unambiguous easement language to conclude that defendants had a right to install, maintain, and use a seasonal dock at the end of Lakeview drive. We agree in part and disagree in part.

"The extent of a party's rights under an easement is a question of fact for the trial court." *Little v Kin*, 249 Mich App 502, 507; 644 NW2d 375 (2002) (*Little I*). We review the findings of fact made by the trial court at a bench trial for clear error. *Walters v Snyder*, 239 Mich App 453, 456; 608 NW2d 97 (2000). "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake has been made." *Yono v Carlson*, 283 Mich App 567, 569; 770 NW2d 400 (2009) (quotation marks and citation omitted). A trial court's conclusions of law following a bench trial are reviewed de novo. *Walters*, 239 Mich App at 456. "We also review de novo a trial court's rulings on equitable issues, including the grant of injunctive relief." *Little I*, 249 Mich App at 507.

It is clear under Michigan law that when the language of an easement is unambiguous, the trial court is prohibited from considering extrinsic evidence of the intended scope of the easement. Although defendants insist that the trial court correctly relied on *Thies v Howland*, 424 Mich 282, 293; 380 NW2d 463 (1985), for the proposition that "the intent of the dedicator is to be determined from the language used in the dedication *and the surrounding circumstances*," (emphasis added), we note that binding caselaw from both this Court and the Michigan Supreme Court implicitly overrules *Thies* to the extent that it permits examination of extrinsic evidence to interpret unambiguous language in an easement. As we explained in *Dyball v Lennox*, 260 Mich App 698, 703-704; 680 NW2d 522 (2004):

> This Court in *Little I*, [249 Mich App at 507], indicated that the rights of nonriparian owners should be determined by examining the language of the easement and the circumstances existing at the time of the grant. In *Little v Kin*, 468 Mich 699; 664 NW2d 749 (2003) (*Little II*), our Supreme Court affirmed *Little I*, *supra*, but noted that, when the language of the easement grant is plain and unambiguous, a directive to consider circumstances existing at the time of the grant was inconsistent with well-established principles of legal interpretation. The Supreme Court provided that "[w]here the language of a legal instrument is plain and unambiguous, it is to be enforced as written and no further inquiry is permitted." In addition, our Supreme Court provided "[i]f the text of the easement is ambiguous, extrinsic evidence may be considered by the trial court in order to determine the scope of the easement." [Internal citations omitted.]

In other words, a trial court errs when it takes into account extrinsic evidence, including evidence of surrounding circumstances existing at the time of the grant, when the language of the easement is unambiguous. *Dyball*, 260 Mich App at 704. To the extent the trial court here relied on *Thies* to support its consideration of extrinsic evidence, it committed clear legal error.

Generally, consideration of extrinsic evidence of a drafter's intent is appropriate only when a document contains an ambiguity, either patent or latent. *Shay v Aldrich*, 487 Mich 648, 641; 790 NW2d 629 (2010). Unlike a patent ambiguity, clear on the face of the document, a latent ambiguity is not readily apparent from the language of a document. *Id*. Instead, it "arises from a collateral matter when the document's terms are applied or executed." *City of Grosse Pointe Park v Mich Municipal Liability and Property Pool*, 473 Mich 188, 198; 702 NW2d 106 (2005), quoting *Black's Law Dictionary* (7th ed). Detection of a latent ambiguity requires consideration of factors outside the document itself, and a court may consider extrinsic evidence first as proof of a latent ambiguity, and, once a latent ambiguity has been confirmed, to prove the drafter's intent. *Grosse Pointe Park*, 473 Mich at 198, 201.

It is undisputed that the easement language here was not patently ambiguous. The relevant language of the plat—"the streets and alleys as shown on said plat are hereby dedicated to the use of the lot owners"—along with the relevant deed language—"[w]ith full privilegs [sic] to the lot owner the wright [sic] away to the lake and the wright [sic] to have not more than two boats on shore at any time fore [sic] private use only"—as plaintiff, concedes, grants subdivision lot owners an easement for lake access, and the right to have up to two boats on the shore at any time. The trial court acknowledged that the language was clear, but defendants argued that circumstances existing at the time of the grant created an ambiguity in the application of the easement language. Specifically, defendants presented evidence that the dock at issue had been seasonally installed since before the deeds issued, and argued that with over 40 lots in the subdivision, each lot owner's right to "have not more than two boats on shore" was an impossibility without the existence of a dock. The trial court eventually agreed, opining that the circumstances, namely, the number of lot owners in the subdivision, rendered the application of the easement an "impossibility" and indicated an ambiguity in the meaning of the word "shore." The trial court explained that it would hold a bench trial to take evidence on the matter of the grantor's intent.

To the extent the trial court's consideration of extrinsic evidence was to detect an ambiguity in the easement language, we find that it was proper. However, we believe that the trial court clearly erred when it found an ambiguity in the easement language.

"To verify the existence of a latent ambiguity, a court must examine the extrinsic evidence presented and determine if in fact that evidence supports an argument that the [easement] language at issue, under the circumstances of its formation, is susceptible to more than one interpretation." *Shay*, 487 Mich at 668. Here, the trial court did not find a plausible alternate interpretation for the easement language. Rather, the trial court mistakenly equated the granted right to "have not more than two boats on shore" at one time, with a right to *store* up to two boats on the shore at any time, before determining that the drafter's language was impossible to apply. We find no basis in the extrinsic evidence to support the trial court's finding. There is no evidence to support the inference that the drafter intended to allow boat storage on the shore, as opposed to providing for mere ingress and egress. On its face, the easement language is

consistent with established right of nonriparian lot owners with access to a waterbody, which is to use the surface of the water in a reasonable manner for such activities as boating, fishing, swimming, and temporarily anchoring boats. *Thies*, 424 Mich at 288. The right to erect and maintain docks, and the right to anchor boats permanently, is reserved for riparian owners, and although "Michigan law clearly allows the original owner of riparian property to grant an easement to backlot owners to enjoy certain rights that are traditionally regarded as exclusively riparian," *Dyball*, 260 Mich App at 706, such a grant must fall within the scope of the dedication creating the easement, *Thies*, 424 Mich at 293. "Reservation of a right of way for access does not give rise to riparian rights, but only a right of way." *Dyball*, 260 Mich App at 706. Despite the misspelling, the plain language of the easement here challenged provides backlot owners with a right of way to access the lake, and nothing more. The trial court's finding that more than 80 boats could not fit on the shore at one time, if accurate, was irrelevant, and the word "shore" is not ambiguous under the appropriate application of the easement language.[2] Courts may not create an ambiguity where the terms of an instrument are clear. *Grosse Pointe Park*, 473 Mich at 198. The trial court here relied on a number of assumptions, to force an ambiguity that simply did not exist. We therefore find that the trial court erred when it proceeded to consider extrinsic evidence of the drafter's intent.

Ultimately, after hearing evidence of the surrounding circumstances at a bench trial, the trial court concluded that the easement language was unambiguous, clearly granting defendants a limited right of access consistent with Michigan law. Thus, to the extent the trial court erred in accepting extrinsic evidence of the grantor's intent, its error was harmless. Further, we find that the trial court did not err when it concluded that under Michigan law, the backlot owners' right to access the lake included a commensurate right to build a dock at the road end. The trial court supported its conclusion with a verbatim reading of the following passage from the Michigan Supreme Court's 1985 opinion in *Thies*, 424 Mich at 295-296:

> Public ways which terminate at the edge of navigable waters are generally deemed to provide public access to the water. A city, on behalf of its citizens, is entitled to build wharves at the end of such streets to aid the public's access. The right to build a wharf or dock does not depend on whether the public owns the fee in the way. Rather, it is based upon the presumption that the plattor intended to give access to the water and permit the building of structures to aid in that access. Any dock which is constructed at the end of a common way must be made available for the use of those to whom the way is dedicated. The fact that only subdivision owners can use the alleys and docks would not require a different result. [Citations omitted.]

---

[2] Because we find that the trial court's admission of extrinsic evidence to prove the drafter's intent was error, we need not address, as moot, plaintiffs' claim that the trial court abused its discretion when it denied plaintiffs' request to admit the affidavit of unavailable witness Leonard Ewers. See *Gen Motors Corp v Dep't of Treasury*, 290 Mich App 355, 386; 803 NW2d 698 (2010).

According to plaintiffs, the court's reliance on *Thies* and its precedent was misplaced because these decisions involved a governmental entity seeking to construct a dock to facilitate public access to a waterway over a road end dedicated to the public. Plaintiffs' assertion is inaccurate.

*Thies* involved a dispute between property owners, similar to the one presented here, in a subdivision abutting Gun Lake. *Thies,* 424 Mich at 286. At issue was the right of the defendants, as backlot owners, to construct a dock and moor their boats along a walkway running parallel to the lakeshore. *Id.* The Court held that while the scope of the dedication of land to public use in a subdivision depends on the intent of the dedicator, public ways terminating at the edge of a waterway are presumed to have been intended to provide public access to the water. *Id*. at 295-296. The *Thies* Court recognized that "[c]ases involving a way which terminates at the edge of a navigable body of water are treated differently from those involving a way which runs parallel to the shore," and found that the defendants in that case did not have a right to construct a dock or to anchor their boats in the water in front of the easement. *Id.* at 295-297. However, although the defendants did not prevail in *Thies*, the trial court's reliance on that case and its precedent to support its assertion that "public roads that terminate at the edge of the navigable waters are presumed to provide public access to the water," and that this is the result even in cases where the road is private and access to water is restricted to lot owners, was not error.

Plaintiffs' argument that defendants could not maintain a right under the easement language to construct a dock at the road end, because the right to erect a dock is exclusive to riparian property owners, is unpersuasive. "Persons who own an estate or have a possessory interest in riparian land enjoy certain exclusive rights. These include the right to erect and maintain docks along the owner's shore, and the right to anchor boats permanently off the owner's shore." *Hess v West Bloomfield Tp*, 439 Mich 550, 561-562; 486 NW2d 628 (1992), quoting *Thies*, 424 Mich at 287-288. However, while "the right to erect a dock belongs exclusively to riparian owners," it does not follow that "the right is not available to the general public." *Thom v Rasmussen,* 136 Mich App 608, 612; 358 NW2d 569 (1984). "Whether the public has the right to maintain the subject dock does not depend on riparian ownership, but rather whether the scope of the dedication of the platted property encompasses the right to erect and maintain a dock." *Id*. Here, the scope of the dedication is presumed to include the right to construct and maintain a dock for temporary anchoring of boats, and the trial court did not err when it so held.

## III. PLAINTIFFS' MOTION FOR SUMMARY DISPOSITION

Plaintiffs argue that the trial court erred when it denied their motion for summary disposition and request for declaratory and injunctive relief after misinterpreting the easement language. Typically, this Court reviews de novo a trial court's grant or denial of a motion for summary disposition. *Loweke v Ann Arbor Ceiling & Partition Co, LLC*, 489 Mich 157, 162; 809 NW2d 553 (2011). However, plaintiffs provide no argument in support of their claim of error. "It is not enough for an appellant in his brief simply to . . . assert an error and then leave it up to this Court to . . . unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Mettler Walloon, LLC v Melrose Twp*, 281 Mich App 184, 220; 761 NW2d 293 (2008) (quotation marks and citation omitted). Although we are not required to address plaintiffs' claim, we find that it lacks merit.

Plaintiffs requested summary disposition pursuant to both MCR 2.116(C)(9) and (C)(10), the trial court did not specify, in its oral conclusions or written order, which subsections it considered before denying plaintiffs' motion. However, it is apparent that the trial court considered evidence beyond the pleadings and, in such a case, this Court treats the trial court's decision as though it were made only pursuant to MCR 2.116(C)(10). See *Sharp v City of Lansing*, 238 Mich App 515, 518; 606 NW2d 424 (1999). Summary disposition is proper under MCR 2.116(C)(10) if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment . . . as a matter of law." *West v Gen Motors Corp,* 469 Mich 177, 183; 665 NW2d 468 (2003). Presumably, plaintiffs believe that they were entitled to summary disposition based solely on the properly interpreted easement language. However, the trial court correctly interpreted the easement language, and plaintiffs were not entitled to summary disposition as a matter of law. Additionally, plaintiffs fail to acknowledge or address the pending cross-claim for summary disposition filed by defendants, asserting an alternative to the easement language in the form of prescriptive easement. The issue of permissive use was clearly in dispute, and genuine issues of material fact therefore remained. The trial court did not err when it denied plaintiffs' motion for summary disposition and proceeded to a bench trial.

## IV. ESTABLISHMENT OF A PRESCRIPTIVE EASEMENT

Next, plaintiffs argue that the trial court erred in finding that defendants had established a prescriptive easement for use of a seasonal dock at the end of Lakeview Drive. We disagree.

"An action for a prescriptive easement is equitable in nature." *Mulcahy v Verhines*, 276 Mich App 693, 698; 742 NW2d 393 (2007). We review the trial court's holdings in equitable actions de novo. *Id*. "However, we review the trial court's findings of fact for clear error." *Matthews v Natural Resources Dep't*, 288 Mich App 23, 35; 792 NW2d 40 (2010).

"An easement represents the right to use another's land for a specified purpose." *Plymouth Canton Community Crier, Inc v Prose*, 242 Mich App 676, 678; 619 NW2d 725 (2000). "In other words, an easement does not displace the general possession of the land by its owner, but merely grants the holder of the easement qualified possession only to the extent necessary for enjoyment of the rights conferred by the easement." *Matthews*, 288 Mich App at 37 (quotation marks and citation omitted). Easements may be created by express grant, by reservation or exception, or by agreement. *Heydon v MediaOne*, 275 Mich App 267, 270; 739 NW2d 373 (2007). They can also be created by prescription. *Id*. "An easement by prescription results from use of another's property that is open, notorious, adverse, and continuous for a period of fifteen years." *Plymouth Canton*, 242 Mich App at 679. Mere permissive use of another's property does not create a prescriptive easement. *Id.* The use must be "hostile," although that term implies no ill will. *Id*. at 681, quoting *Goodall v Whitefish Hunting Club*, 208 Mich App 642, 646; 528 NW2d 221 (1995). "Adverse or hostile use is use inconsistent with the right of the owner, without permission asked or given[.]" *Id*. In other words, "[u]se of another's property qualifies as adverse when made under a claim of right when no right exists." *Plymouth Canton*, 242 Mich App at 681.

Following trial, the court concluded that the testimony proved that the dock had been installed and boats had been moored overnight at the road end for "far more than 15 years" on a seasonal basis. The trial court reiterated its conclusion that the plain language of the easement

allowed for the installation of a dock and mooring of boats during the day and defendants' use for these purposes was therefore permissive. However, according to the trial court, defendants' use of the dock to moor boats overnight, rather than just temporarily during the day, constituted a use "inconsistent with the plat language extended to the lot owners," and established the required hostile use. Plaintiffs take no issue with the trial court's finding of open, notorious, and continuous use for more than 15 years. They argue only that defendants failed to prove that their installation and use of the dock at the end of Lakeview Drive was "adverse," or "hostile." Plaintiffs assert that the trial court clearly erred in concluding that defendants established a prescriptive easement because the testimony showed "that the docks were installed pursuant to an agreement" which demonstrated permissive use by defendants.

As previously discussed, nothing in the easement language permitted the use of a dock for permanent mooring of boats at the end of Lakeview Drive. However, trial testimony indicated that defendants and prior back lot owners had seasonally maintained a dock for overnight mooring of boats at the end of Lakeview Drive since the 1940s or 50s. As the trial court noted, "the history all the way back from the [19]40s would establish that there was virtually almost always a dock there and boats staying overnight." Plaintiffs have not disputed this finding on appeal. Instead, plaintiffs argue that the testimony of two defense witnesses, Richard Ellis and Gary Brown, proved that while defendants' use of the road end was contrary to the easement language, it had also been permissive. Ellis and Brown both testified that the road end docks in the subdivision, including the one at the end of Lakeview Drive, were installed based upon mutual agreement of the lot owners. Even if we assume that these witnesses' testimony was credible,[3] it does not establish that defendants' use of the road end was "permissive." Defendants' agreement amongst themselves, whether spoken or unspoken, to maintain and share a dock, did not render their actions in so doing less inconsistent with the rights of the *property owner*. Plaintiffs have presented no evidence that defendants' maintenance of a dock at the end of Lakeview Drive originated in written grant or oral permission, either from plaintiff or from the land grantor. It was plaintiffs' burden to prove that defendants' use of the road end for docking boats was permissive, *Dyer v Thurston*, 32 Mich App 341, 343; 188 NW2d 633 (1971), and plaintiffs failed to meet that burden here. The trial testimony indicated that defendants' seasonal construction of the dock for permanent mooring was undertaken pursuant to defendants' mistaken assumption that they had the right and authority to maintain a dock and permanently moor boats at the road end. Defendant's use of the property was therefore sufficiently adverse to establish the element of hostile or adverse use required for prescriptive easement.

Defendants have clearly established the elements necessary to support the creation of a prescriptive easement. Trial testimony established that the right granted by the trial court

---

[3] Generally, this Court defers to the trial court's credibility determinations, given its "superior position to make these judgments." *Shann v Shann*, 293 Mich App 302, 305; 809 NW2d 435 (2011).

properly reflected the practice of back lot owners in the subdivision for more than 60 years. We therefore find the grant proper.

## V. JUDICIAL DISQUALIFICATION

Finally, plaintiffs argue that the trial court engaged in conduct demonstrating bias throughout the lower court proceedings. Plaintiffs seek relief in the form of judicial reassignment on remand. However, because we affirm the trial court's decision, remand is not required and plaintiffs' argument is moot. *Gen Motors Corp v Dep't of Treasury*, 290 Mich App 355, 386; 803 NW2d 698 (2010) (explaining that an issue is moot if an event has occurred that render it impossible to grant relief or when a judgment "cannot for any reason have a practical legal effect on the existing controversy.").

Affirmed.


/s/ Michael F. Gadola
/s/ Kathleen Jansen
/s/ Henry William Saad