# STATE OF MICHIGAN

# COURT OF APPEALS

BARBARA J. WAMSLEY,

      Plaintiff/Counter-Defendant-
      Appellant,

v

JAMES D. MARTIN and VIRGINIA L.
DASCENZA,

      Defendants/Counter-Plaintiffs-
      Appellees.

UNPUBLISHED
July 17, 2018

No. 337943
Cheboygan Circuit Court
LC No. 16-008568-CH

Before: RONAYNE KRAUSE, P.J., and GLEICHER and LETICA, JJ.

PER CURIAM.

At issue in this case is 7.5 feet of bank along the Indian River. The trial court quieted title in defendants' favor, determining that their northern property line continued to the water's edge. Plaintiff Barbara Wamsley owns a parcel which is developed on the other side of the street, but which continues to the river's edge. She contends that defendants' property line is marked by a fence and the edge of a building. We discern no error in the trial court's judgment to the contrary and affirm.

## I. BACKGROUND

James Martin and his wife Virginia Dascenza, defendants, purchased a triangular shaped lot along the Indian River from Juanita Widell in 2003. Defendants' property is their private residence. However, the land was once part of a larger parcel (Lot 6) that was a small rental cottage resort. In approximately 1968, Widell and her husband erected a fence, marked in red below, spanning only a portion of their property, to keep their dog from wandering. The fence remains in place today.

The Wamsley family has owned the lot to the west of defendants since 1963. The property extends to the river's edge, although Prospect Road bisects the land. The larger portion, on the far side of the road, is developed as a residence. A narrow strip follows the river and the Wamsleys have installed a dock.

-1-

The battle between neighbors started in approximately 2012, over the area circled below.



This area is 7.5 feet long and slopes down to the river.

In 2003, the parties split the cost of professional weed removal on the point of land. Over the years, they worked together to keep the area mowed and weeded. It appears that the dispute began when defendants erected a removable, seasonal boat hoist in the area in 2012. Plaintiff, Barbara Wamsley, is the current owner of the Wamsley family lot. She removed and hid defendants' hoist, but returned it on police orders. The neighbors also reported each other for trespassing on the land.

Wamsley eventually filed the current lawsuit, seeking to quiet title to the disputed piece of land and to enforce a 10-foot setback requirement for "structures," such as boat hoists, under the Cheboygan Zoning Ordinance (CZO). The parties each presented expert witnesses to interpret the plat map of the area. These experts gave varying opinions about the boundaries and dimensions of defendants' parcel. Wamsley contended that regardless of the description of defendants' property in their deed and the land records, defendants and their predecessors acquiesced in the Wamsley family's sole enjoyment of the area for several decades.

Following a bench trial, the circuit court ruled that the seasonal boat hoist was not a structure under the CZO's definition and therefore its erection did not violate the ordinance. The court rejected Wamsley's claim to title by acquiescence and also based on the legal descriptions of the lots. Accordingly, the court quieted title in defendants' favor. Wamsley now appeals.

## II. PROPERTY TITLE

This Court outlined our standard of review in quiet title actions in *Jonkers v Summit Twp*, 278 Mich App 263, 265; 747 NW2d 901 (2008):

> We review the trial court's findings of fact in a bench trial for clear error and conduct a review de novo of the court's conclusions of law. Equitable rulings to quiet title, as well as questions of law in general are reviewed de novo.

However, we defer to the trial court's findings of fact in an action to quiet title; those findings will be given weight and reversed only if they are clearly erroneous. The clear-error standard requires us to give deference to the lower court and find clear error only if we are nevertheless left with the definite and firm conviction that a mistake has been made. [Quotation marks and citations omitted.]

The circuit court did not clearly err in finding that defendants are the record owners of the small piece of land. Defendants' deed describes their property's northern border as travelling "from the Northeast corner of said Lot 6" for 130 feet "to the waters edge of Indian River." The southern border then travels 126 feet eastward along the river's edge. Defendants presented the testimony of Brian Fullford, who surveyed their property in 2006. Fullford reviewed the deed description, the 1880 plat map of the village of Indian River, and a 1968 survey. Fullford determined that defendants' property ended in a point at the water's edge.

George Platz testified on Wamsley's behalf and conducted a land survey specifically for the litigation. Platz asserted that he found no boundary monuments on the west side of the property, although he found stakes on the east. Platz reviewed the 1880 plat, which depicted the full Lot 6 extending 198 feet along the waterfront with a northern boundary line ending at the water's edge. Platz considered whether defendants' fence could be the property boundary, but even he determined that the lot extended beyond that point by 2.7 feet. Platz also reviewed the 1968 land survey and noted that it extended the dimension of Lot 6's waterfront boundary from 198 to 205.5 feet. Widell's predecessor then used that measurement to transfer title of the western portion of Lot 6 to the water's edge to Widell.

Both Platz and Fullford outlined their research process and methods of measurement. The court had to decide which witness was most credible, or at least whose results were the most reliable. We must give special regard to the lower court's opportunity to observe the witnesses first hand and judge their credibility. MCR 2.613(C); *In re Clark Estate*, 237 Mich App 387, 395-396; 603 NW2d 290 (1999). Moreover, public policy favors consistency in boundary lines. *Jonkers*, 278 Mich App at 267. Michigan law has long favored relying on natural landmarks over platted distances:

> Nothing is better understood than that few of our early plats will stand the test of a careful and accurate survey without disclosing errors. . . .
>
> . . . No rule in real estate law is more inflexible than that *monuments control course and distance,*—a rule that we have frequent occasion to apply in the case of public surveys, where its propriety, justice and necessity are never questioned. But its application in other cases is quite as proper, and quite as necessary to the protection of substantial rights. The city surveyor should, therefore, have directed his attention to the ascertainment of the actual location of the original landmarks . . . and if those were discovered they must govern. [*Id*. at 267-268, quoting *Diehl v Zanger*, 39 Mich 601, 605-606 (1878) (COOLEY, J., concurring) (quotation marks and citation omitted in original, emphasis added).]

When there is a conflict between a distance and a natural boundary, such as a body of water, the location of the boundary controls, and the boundary exists where the water actually lies. *Jonkers*, 278 Mich App at 270. Given this state of the law, we discern no error in the circuit court's determination that Fullford accurately set the property's western boundary at the water's edge, giving defendants title to the contested 7.5 feet of waterfront property.

We also discern no error in the circuit court's assessment that Wamsley did not gain title over the subject land through the acquiescence of defendants and their predecessors. The doctrine of acquiescence provides a manner for quieting title when neighbors have acquiesced to a boundary line between their properties. *Killips v Mannisto*, 244 Mich App 256, 260; 624 NW2d 224 (2001). The claimant must establish acquiescence by a preponderance of the evidence. *Id*. "There are three theories of acquiescence . . . : (1) acquiescence for the statutory period; (2) acquiescence following a dispute and agreement; and (3) acquiescence arising from intention to deed to a marked boundary." *Sackett v Atyeo*, 217 Mich App 676, 681; 552 NW2d 536 (1996).

Wamsley asserted title under the first theory: acquiescence for a 15-year period. For this type of acquiescence, Wamsley was not required to establish any historical dispute regarding the proper boundary line; a mere mistake about the actual boundary suffices. *Id*. at 681-682. Proof that parties have treated a boundary as the property line for the statutory period suffices to prove acquiescence. *Mason v City of Menominee*, 282 Mich App 525, 529-530; 766 NW2d 888 (2009). This mutual treatment evidences a mutual mistake, and if that mutual mistake continues for long enough, this newly accepted boundary line "ought not be disturbed." *Johnson v Squires*, 344 Mich 687, 692; 75 NW2d 45 (1956) (quotation marks and citations omitted). See also *Sackett*, 217 Mich App at 681; *Kipka v Fountain*, 198 Mich App 435, 438; 499 NW2d 363 (1993).

Wamsley testified that she had treated defendants' fence as the boundary between their properties. She weeded the 7.5-foot area on the west side of the fence and took care of the landscaping. However, neither defendants nor their predecessors treated the fence as the property boundary. Widell testified that she knew the fence was not the property boundary. When she owned the land, Widell cleaned up the area west of the fence, picked apples there, and allowed "the kids" to play there. Defendants similarly testified that they knew the fence was not the boundary. They actively used the property west of the fence by weeding it, landscaping it, paying to have it maintained, and allowing their grandchildren to use it. At most, there was evidence of a unilateral mistake on Wamsley's part, which is not sufficient to constitute acquiescence. See *McGee v Eriksek*, 51 Mich App 551, 557; 215 NW2d 571 (1974). Accordingly, the circuit court did not err in quieting title in defendants' favor.

## III. ZONING

Wamsley also argues that the circuit court erroneously concluded that a boat hoist is not a "structure" under the CZO and thus is not subject to that provision's 10-foot setback requirements. We review de novo a lower court's interpretation and application of municipal ordinances. *Great Lakes Society v Georgetown Charter Twp*, 281 Mich App 396, 407; 761 NW2d 371 (2008). "Ordinances are treated as statutes for the purposes of interpretation and review." *Id*. Through zoning ordinances, townships have the authority to regulate the general

nature and natural resources of the community. *Hess v West Bloomfield Twp*, 439 Mich 550, 560; 486 NW2d 628 (1992). Zoning ordinances allow townships to regulate riparian, as well as land, ownership. *Id*.

Reading the entire CZO in context, we agree with the lower court's determination that a boat hoist does not fall within the definition of a "structure." The parties agree that the CZO prohibits any "building or structure" from being "located within any required setback," and that the disputed property has minimum side and rear setbacks of 10 feet. See CZO, §§ 17.2.1 and 17.2.2. At issue is whether defendants' boat hoist qualifies as a "structure" under this provision. The CZO defines a "structure" as:

> [a]nything *constructed or erected on the ground* or which is attached to something located on the ground. *Structures include buildings, radio and TV towers, mobile homes, sheds and permanent signs*, and exclude vehicles, sidewalks and paving. [CZO, § 2.2 (emphasis added).]

The CZO defines "erected" as "signif[ying] the construction, alteration, reconstruction, placement upon, or any physical alteration on the premises, including the excavating, moving, and filling of earth." *Id*.

Wamsley argues that these definitions combine to include boat hoists as structures because boat hoists are placed on the ground. We must read ordinance provisions "reasonably and in context," and read subsections of cohesive provisions together. *Robinson v City of Lansing*, 486 Mich 1, 15; 782 NW2d 171 (2010). No portion of an ordinance should be read in isolation. *Id*. When terms are contained in a list, they should be interpreted in light of other terms in that list. *Manuel v Gill*, 481 Mich 637, 650; 753 NW2d 48 (2008). And "where a general term follows a series of specific terms, the general term is interpreted to include only those things of the same kind, class, character, or nature as those specifically enumerated." *Neal v Wilkes*, 470 Mich 661, 669; 685 NW2d 648 (2004).

The definition of structure includes several examples that would not include a seasonal boat hoist. Specifically, "[s]tructures include buildings, radio and TV towers, mobile homes, sheds and permanent signs, and exclude vehicles, sidewalks and paving," See CZO, § 2.2. Only things of the same kind, class, and character as buildings, towers, mobile homes, sheds, and permanent signs should be considered structures. All of the listed examples are things that are permanently affixed to the land. The boat hoist is not affixed to the land and therefore is not of the same kind, class, and character as the examples.

Similarly, in the definition of "erected," the phrase "placement upon" is included in a list. That list includes construction, alteration, reconstruction, or excavating, moving, or filling earth. Again, the boat hoist's placement did not require any construction, alteration, or excavation to the ground. When the phrase "placement upon" is considered in context, it requires some sort of permanent change to the land. This seasonal boat hoist required no change to the land.

Moreover, the CZO treats boat hoists separately from docks and other structures in other sections, supporting that boat lifts or hoists are not structures. The CZO frequently refers to "boat docks, boat slips, boat wells, ramps, marinas, [and] seawalls" as structures that are subject

to setback requirements. See CZO, §§ 6.4.9, 7.4.9, 8.4.9, 13.4.10, 13A.4.7(b), 13B.4.2(b). However, CZO, § 10.4.4.8, which applies to the protected lakes and streams district, refers separately to boat hoists. Similarly, § 10.4.4.10 refers to "watercraft slip, mooring, or boat hoist" when referring to waterfront access, which is separate from CZO, § 10.4.6's governance of setback requirements for "boat wells, ramps, marinas [and] seawalls[.]" If the county considered boat hoists to be structures, it would make little sense for it to provide different rules in different areas to govern boat hoists separately from boat ramps or docks. Accordingly, considering the entirety of the CZO's language, boat hoists are not structures.

As Wamsley observes, the county's zoning administrator, Steve Schnell, testified that Cheboygan County had never cited anyone for a zoning violation regarding a seasonal boat hoist. Wamsley argues that the circuit court improperly treated Schnell's testimony as binding evidence that a boat hoist is not a structure. "[A]gency interpretations are entitled to respectful consideration, but they are not binding on courts and cannot conflict with the plain meaning of the statute." *In re Complaint of Rovas Against SBC Mich*, 482 Mich 90, 117-118; 754 NW2d 259 (2008). However, Schnell did not offer an interpretation of the ordinance, only his factual observations. Regardless, the court examined the language of the CZO and determined that the boat hoist was not a structure because it was not constructed, erected, or attached to something on the ground. There is no indication that the court considered Schnell's testimony binding.

Wamsley also relies on the definition of "seasonal structure" in the Natural Resources and Environmental Protection Act (NREPA), MCL 324.30101(t). We discern no reason to read the NREPA and the CZO *in pari materia*. Plaintiff's reliance on the NREPA definition is therefore misplaced. See *Sinicropi v Mazurek*, 273 Mich App 149, 157; 729 NW2d 256 (2006).

We affirm.


/s/ Amy Ronayne Krause
/s/ Elizabeth L. Gleicher
/s/ Anica Letica