SACKETT v ATYEO

Docket No. 174961. Submitted April 16, 1996, at Detroit. Decided July 23, 1996, at 9:30 A.M.

Duane and Violet Sackett brought an action in the Lapeer Circuit Court against Scot D. Atyeo and Andrea M. Schroeder, seeking to quiet title to the western half of a gravel driveway located between the plaintiffs' and the defendants' property. The court, Nick O. Holowka, J., relying on the doctrine of acquiescence, entered a judgment establishing the boundary line between the parties' property to be the center of the driveway and ordering the defendants to remove a fence that they had erected on the plaintiffs' property. The defendants appealed.

The Court of Appeals *held*:

1. The trial court properly determined that the plaintiffs owned the western half of the driveway under the doctrine of acquiescence because the defendants' predecessors in title acquiesced for more than the fifteen-year statutory period that the center of the driveway was the boundary, although it was not the recorded property line.

2. The trial court properly admitted hearsay testimony under MRE 804(b)(3), the rule of evidence that provides that a statement against interest is not excluded by the hearsay rule if the declarant is unavailable as a witness. Here, the declarant, the defendants' predecessor in title, had died, the statement was contrary to the declarant's proprietary interest in his property, and the declarant was aware that he was making a statement against his ownership interest.

3. Any error in the admission of other testimony was harmless.

Affirmed.

1. PROPERTY — BOUNDARY LINES — ACQUIESCENCE.

Acquiescence to a boundary line may be established where the line is acquiesced in for the statutory period irrespective of whether there has been a bona fide controversy regarding the boundary.

2. EVIDENCE — HEARSAY — EXCEPTIONS — STATEMENTS AGAINST INTEREST.

The hearsay rule does not exclude a statement against interest where the declarant is unavailable as a witness; a statement that was at

the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or that renders invalid a claim by the declarant against another such that a reasonable person in the declarant's position would not have made the statement unless believing it to be true, is a statement against interest (MRE 804[b][3]).

*Morrice, Lengemann & Zimmerman, P.C.* (by *Marilyn J. Zimmerman*), for the plaintiffs.

*Philip A. Fulks*, for the defendants.

Before: MURPHY, P.J., and REILLY and C. W. SIMON, JR.,* JJ.

PER CURIAM. Defendants appeal as of right a judgment establishing the boundary line between plaintiffs' and defendants' real property and ordering defendants to remove the fence that they erected on plaintiffs' property. We affirm.

This case involves a dispute regarding ownership of the western half of a gravel driveway located between plaintiffs' and defendants' property. Plaintiffs purchased their home and property on West Genesee Street in Lapeer in December 1962. At that time, Chester and Harriet White, defendants' predecessor in title, owned the home and property adjacent and to the east of plaintiffs' home. There was a T-shaped gravel driveway separating the properties, which was located near the eastern boundary of plaintiffs' property and near the western boundary of the Whites' property.

Plaintiffs and the Whites peacefully shared the use of the driveway and split the maintenance expenses associated with the driveway the entire time that they

---

* Circuit judge, sitting on the Court of Appeals by assignment.

were neighbors. At trial, plaintiff husband testified that he and Chester White had conversations regarding ownership of the driveway. The first conversation occurred shortly after plaintiffs moved into their home in 1963. At that time, Chester White asked plaintiff husband if he was aware that the driveway was a shared one. Plaintiff husband responded that he understood that the driveway was shared and that he was to share in the expenses and maintenance of the driveway. According to plaintiff husband, Chester White then stated that they both owned the driveway and that the boundary line was down the middle of the driveway.

According to plaintiff husband, the second conversation between plaintiff husband and Chester White regarding ownership of the driveway occurred five to seven years later. The driveway needed gravel, and plaintiff husband arranged for the gravel to be delivered and spread. At that time, plaintiffs and the Whites split the cost of the gravel and Chester White again indicated to plaintiff husband that the boundary line was down the middle of the driveway.

In 1972, plaintiffs had their property surveyed. The survey of plaintiffs' property revealed that the entire driveway was on the Whites' property. After the survey was done, Chester White and plaintiff husband had a third conversation regarding ownership of the driveway. Chester White told plaintiff husband that he did not care about the survey results, plaintiffs owned the western half of the driveway and the Whites owned the eastern half of the driveway. After the survey, plaintiffs continued to use the driveway.

Vivian Bottger was a friend of the Whites. She recalled having a conversation with the Whites

around 1974 regarding the ownership of the driveway. According to Bottger, Chester White stated that the driveway used to be Jackson Street and that he and plaintiffs owned and shared the driveway. The reason Bottger still remembered the conversation was that she had moved to Lapeer from Detroit, and she thought that it was honorable that two neighbors could get along and share a common driveway peacefully.

In 1985, Chester White died. Harriet White died in 1989. Defendants purchased the Whites' home and property in July 1990. Before the purchase, defendants had a stake survey of the Whites' property done. The survey revealed that the driveway was located on the Whites' property, but the mortgage report contained a notation that the "drive is also used by the house to the west." Defendants also spoke to plaintiffs before they purchased the Whites' house. According to defendant husband, at that time, plaintiffs informed defendants that they shared the driveway, but did not inform defendants that they owned half of the driveway. Defendants apparently purchased the property believing on the basis of the survey that they owned the entire driveway.

Problems between plaintiffs and defendants arose over the use of the driveway. Defendants contacted an attorney. In February 1991, defendants' attorney sent a letter to plaintiffs informing plaintiffs that defendants would be discontinuing use of the driveway and erecting a fence around their property. The letter also stated that defendants expected plaintiffs to stop using the driveway no later than July 1, 1991. Plaintiffs responded to defendants' letter by informing defendants that plaintiffs believed that they owned

the western half of the driveway. In July or August of 1992, defendants erected a fence about six inches inside their property line as established by the stake survey.

On September 8, 1992, plaintiffs filed an action to quiet title to the western half of the driveway, arguing that they were the owners of that portion of the driveway under the doctrine of acquiescence.[1] The trial court entered a judgment for plaintiffs, in effect determining that, on the basis of the doctrine of acquiescence, the legal boundary line between plaintiffs' and defendants' property was the center of the driveway. In so doing, the trial court stated:

> In any event, I am satisfied that on a preponderance of the evidence that's been presented to me that acquiescence did occur. That it occurred at least from 1972 and possibly before that. And that therefore, a portion of the driveway that is shown on the surveys, and I'm referring right now to the Defendants' Exhibit C, that a portion of the driveway is owned by the plaintiffs and, of course, and a portion is owned by the defendants.

Defendants appeal as of right.

Actions to quiet title are equitable in nature; this Court reviews such actions de novo. *Michigan Nat'l Bank & Trust Co v Morren*, 194 Mich App 407, 410; 487 NW2d 784 (1992). We review the trial court's factual findings for clear error. *Id.*

Defendants argue that the trial court erred in determining that, on the basis of the doctrine of acquiescence, the boundary line between plaintiffs' and

---

[1] The complaint also contained claims of negligent and intentional infliction of emotional distress. However, the trial court granted defendants' motion for summary disposition regarding these claims, and plaintiffs do not argue on appeal that summary disposition was improper.

defendants' property was the center of the driveway. We disagree. There are three theories of acquiescence. These three theories were outlined and explained in *Pyne v Elliott*, 53 Mich App 419, 426-428; 220 NW2d 54 (1974). They include: (1) acquiescence for the statutory period; (2) acquiescence following a dispute and agreement; and (3) acquiescence arising from intention to deed to a marked boundary. *Id.*; see also *Rock v Derrick*, 51 Mich App 704, 708-709; 216 NW2d 496 (1974). The relevant theory in this case is acquiescence for the statutory period. We conclude that the Whites acquiesced that the center of the driveway was the boundary line between their property and plaintiffs' property for more than the fifteen-year statutory period. MCL 600.5801(4); MSA 27A.5801(4). Therefore, the trial court properly determined that the center of the driveway was the boundary line between plaintiffs' and defendants' property on the basis of the acquiescence for the statutory period.

Under this theory of acquiescence, acquiescence to a boundary line may be established where the line is acquiesced in for the statutory period irrespective of whether there has been a bona fide controversy regarding the boundary. *Jackson v Deemar*, 373 Mich 22, 26; 127 NW2d 856 (1964). In *Kipka v Fountain*, 198 Mich App 435; 499 NW2d 363 (1993), this Court explained:

> The law of acquiescence is concerned with a specific application of the statute of limitations to cases of adjoining property owners who are mistaken about where the line between their property is. Adjoining property owners may treat a boundary line, typically a fence, as the property line. If the boundary line is not the recorded property line, this

> results in one property owner possessing what is actually the other property owner's land. Regardless of the innocent nature of this mistake, the property owner whose land is being possessed by another would have a cause of action against the other property owner to recover possession of the land. After fifteen years, the period for bringing an action would expire. The result is that the property owner of record would no longer be able to enforce his title, and the other property owner would have title by virtue of his possession of the land. [*Id.*, 438-439.]

In this case, plaintiffs and the Whites mistakenly treated the center of the driveway as the boundary between their property when it was not the recorded property line. Because the entire driveway was actually on the Whites' property, plaintiffs' and the Whites' treatment of the center of the driveway as the boundary resulted in plaintiffs possessing what was actually the Whites' land. Until the fifteen-year period expired, the Whites would have had a cause of action against plaintiffs to recover possession of the western half of the driveway. Here, however, the statutory period was satisfied. The Whites, although the true owners of the entire driveway, treated the center of the driveway as the true boundary between their property and plaintiffs' property from 1963 until 1989, a period of about twenty-six years. In 1972, plaintiffs' survey revealed that the driveway was actually located on the Whites' property. Despite this knowledge, the Whites continued to acquiesce to the boundary line being the center of the driveway from 1972 until 1989, a period of seventeen years. As the Supreme Court has noted: " 'It has been repeatedly held by this Court that a boundary line long treated and acquiesced in as the true line, ought not to be disturbed on new surveys. Fifteen years' recognition and

acquiescence are ample for this purpose.' " *Johnson v Squires*, 344 Mich 687, 692; 75 NW2d 45 (1956) (citations omitted), quoting *Dupont v Starring*, 42 Mich 492, 494; 4 NW 190 (1880). The Whites acquiesced that the center of the driveway was the boundary line between their property and plaintiffs' property for more than fifteen years. Accordingly, the trial court properly determined that plaintiffs owned the western half of the driveway under the doctrine of acquiescence.

Defendants next argue that the trial court erred in admitting certain hearsay testimony. This Court reviews a trial court's evidentiary rulings for an abuse of discretion. *Haberkorn v Chrysler Corp*, 210 Mich App 354, 361; 533 NW2d 373 (1995). An error in the admission of evidence is not a ground for vacating, modifying, or otherwise disturbing a judgment unless refusal to take such action would be inconsistent with substantial justice. MCR 2.613(A).

Defendants argue that the trial court abused its discretion in admitting Richard Bahls' testimony that Chester White made an affirmative remark indicating his agreement when plaintiffs' predecessor in title, in Chester White's presence, stated that the driveway used to be Jackson Street, that Jackson Street had been vacated, and that he (plaintiffs' predecessor in title) owned the western half of the driveway and Chester White owned the eastern half. Defendants also argue that the trial court abused its discretion in admitting plaintiff husband's testimony that Chester White stated that the middle of the driveway was the boundary line in 1963, again five to seven years later, and in 1972 after plaintiffs had their property surveyed.

Plaintiff husband's testimony that Chester White stated to him that plaintiffs owned the western half of the driveway and the Whites owned in eastern half of the driveway after being made aware of the results of the 1972 survey was admissible as a statement against interest pursuant to MRE 804(b)(3). MRE 804(b)(3) provides that the following is not excluded by the hearsay rule if the declarant is unavailable as a witness:

> *Statement against interest.* A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true.

The declarant, Chester White, died in 1985 and was therefore unavailable. MRE 804(a)(4). Furthermore, Chester White's statement was contrary to his proprietary interests. Proprietary interest is defined as "[t]he interest of an owner of property together with all rights appurtenant thereto." Black's Law Dictionary (6th ed), p 1219. Chester White's statement was contrary to his proprietary interest in his property because the statement was a statement against his ownership interest in a portion of his property. A reasonable person would not make such a statement unless he believed it to be true. Accordingly, we conclude that the trial court did not abuse its discretion in admitting the testimony pursuant to MRE 804(b)(3).

In *Roberts v City of Troy*, 773 F2d 720, 725 (CA 6, 1985), the Court of Appeals for the Sixth Circuit stated that hearsay evidence under the declaration

against interest exception is unreliable unless the declarant is aware at the time of the making of the statement that it is against his interest. Chester White made the statement in 1972 in response to the results of plaintiffs' survey of their property, which indicated that the entire driveway was on the Whites' property. In making the statement, Chester White referred to the survey and indicated that, regardless of the survey, plaintiffs owned the western half of the driveway and the Whites owned the eastern half. Thus, to the extent that an awareness requirement exists, this requirement was satisfied because Chester White was aware in 1972 that, by stating that plaintiffs owned the western half of the driveway, he was making a statement against his ownership interest in that portion of the driveway.

We need not decide whether the trial court abused its discretion in admitting Richard Bahls' testimony or the remaining portions of plaintiff husband's testimony that defendants argue were improperly admitted. Even if the trial court abused its discretion in admitting the testimony, the errors were harmless because the testimony was merely cumulative. Other testimony, such as Vivian Bottger's testimony that in 1974 Chester White stated that the Whites and plaintiffs owned and shared the driveway, which defendants did not object to, as well as plaintiff husband's testimony that Chester White stated that the center of the driveway was the boundary after the 1972 survey, was sufficient to support the trial court's finding that the Whites acquiesced to plaintiffs' ownership of the western portion of the driveway for more than fifteen years. Accordingly, any error in the admission of the

evidence was harmless. MCR 2.613(A).
    Affirmed.