# STATE OF MICHIGAN

# COURT OF APPEALS

TIMOTHY J. BAHMER,

        Plaintiff-Appellant,

v

WALTER OBRINSKE, and
KARI OBRINSKE,

        Defendants-Appellees.

UNPUBLISHED
January 25, 2018

No. 336664
Calhoun Circuit Court
LC No. 15-003493-CH

Before: MARKEY, P.J., and SHAPIRO and GADOLA, JJ.

PER CURIAM.

Plaintiff appeals the trial court's decision, after a bench trial, dismissing his quiet title complaint against defendants and holding that defendants are the owners in fee simple of the disputed strip of land. For the reasons set forth below, we affirm.

## I. BACKGROUND FACTS

Plaintiff and defendants own adjoining properties. Defendants' property ("Obrinske property") is located to the immediate west of plaintiff's property ("Bahmer property"). Plaintiff's family has owned the Bahmer property since 1901, when his ancestor acquired it by deed and plaintiff has personally owned the property since 2000. The Obrinske family has owned the adjacent property since 1951 and it was deeded to defendant Walter in 2000. Between the two parcels, there is an area of tree-covered land 50-70 feet wide that the parties refer to as "the fencerow." The remains of an old fence runs north-south somewhere in the middle of the fencerow. The parties disputed where the precise property line was and so defendants had a survey performed. The survey concluded that the boundary between the parties' properties is "approximately 8 feet to the east of the fence at the southern end of the properties and is approximately 14 feet to the east of the fence at the north end of the properties." Plaintiff asserts that he owns all the land east of the fence and so the dispute before us concerns ownership of the strip of land running along the eastside of the fence, which the survey concluded belongs to defendants. Plaintiff does not dispute the findings of the survey, but asserts that he and his predecessors-in-interest obtained the strip of land on the east side of the abandoned fence by reason of acquiescence. He argues that this right-by-acquiescence vested before defendants acquired the Obrinske property because plaintiff's predecessors erected the fence line and treated it as the boundary line before defendants acquired their property.

-1-

Plaintiff therefore filed the instant suit seeking to quiet title to the "land and trees located East of the existing fence line/tree" and to enjoin defendants from any further interference with the property. Defendants filed a counter-complaint for trespass and nuisance in fact against plaintiff. The counter-complaint also sought to quiet title to the disputed area in defendants, and an injunction permanently enjoining plaintiff from claiming any adverse claim against the Obrinske property.[1]

The trial court conducted a bench trial and concluded that plaintiff failed to prove that defendants had treated the fence as the boundary line between the properties for the 15-year statutory period, and so found that plaintiff did not have any right to the property by acquiescence.[2]

## II. LEGAL ANALYSIS

## A. HEARSAY

On appeal, plaintiff first argues that the trial court improperly admitted and relied on hearsay testimony from Russell Obrinske, who is defendant Walter's father. We disagree.[3]

Russell testified that he owned the Obrinske property before defendants became the owners. His father owned it before him and had acquired the property in 1951. They began living in the property in 1952 when Russell was 18 years old, and he lived on the property for 64 years before he sold it to defendant Walter.

Plaintiff asserts that the trial court admitted hearsay in the course of the following testimony:

> [*Defendants' counsel*]. Who owns the fencerow?
>
> [*Russell*]. Well, I guess we do, according to the survey, and what Mr. Olier told us.
>
> [*Plaintiff's counsel*]. I'll object, hearsay.

---

[1] Both parties filed motions for injunction against the other. Thereafter, the parties consented to, and the court granted, a mutual and reciprocal preliminary injunction restraining and enjoining each party or any person acting on behalf of each party from "cutting, damaging, removing selling, or transferring the trees, fence or undergrowth along the eastern boundary line of defendants' real estate."

[2] The trial court also dismissed the defendant's counterclaim for trespass because defendants had failed to present any evidence of damages.

[3] A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion, which occurs when the trial court chooses an outcome that falls outside the range of principled outcomes. *Edry v Adelman*, 486 Mich 634, 639; 786 NW2d 567 (2010).

*The court.* Response?

[*Defendants' counsel*]. I—I—I understand.

*The court.* Very good, we'll strike that last part of the answer.

We agree with plaintiff that Russell's reference to what Mr. Olier said was hearsay. However, the trial court sustained plaintiff's objection, and struck that portion of the testimony after which defendants' counsel reminded Russell that "[w]e can't talk about what Olier said."

Plaintiff argues that defendants attempted to offer the statement about what Mr. Olier said under the hearsay exception of statement against interest, MRE 804(b)(3)[4] and *Sackett v Atyeo*, 217 Mich App 676; 552 NW2d 536 (1996). However, the record does not support this assertion. Defendants did not argue that the statement should be admitted pursuant to MRE 804(b)(3) and did not make reference to the *Sackett* case; rather, as just quoted, defendants' counsel stated in response that he understood and informed Russell that he could not testify about what Mr. Olier said. Accordingly, there was no error as to this portion of the testimony.

Plaintiff also argues that Russell's testimony about where he walked and what he understood "from Mr. Oyler's [sic] hearsay remarks to be the boundary line in 1951" constitutes hearsay. Plaintiff's argument concerns the following exchange:

[*Defendants' attorney*]. But when your father bought the property, were you with him?

[*Russell*]. Yes, I was.

[*Defendants' attorney*]. And did your father go out to the property before he bought it?

[*Russell*]. Yes, he did.

[*Defendants' attorney*]. And where you with him?

[*Russell*]. Yes, I was.

---

[4] MRE 803(b)(3) provides in pertinent part as follows:

Statement against interest. A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the position of the declarant would not have made the statement unless the person believed it to be true. . . .

[*Defendants' attorney*]. Is the fencerow pretty much in the same place now that it was back then?

[*Russell*]. Yes.

[*Defendants' attorney*]. Has it changed much?

[*Russell*]. No.

[*Defendants' attorney*]. Did your father and Mr. Olier walk the property?

[*Russell*]. Yes, we did.

[*Defendants' attorney*]. And you walked what you understood to be the boundary lines?

[*Russell*]. Yes.

[*Plaintiff's attorney*]. I'm going to object to that, because that understanding is based on hearsay.

[*Defendants' attorney*]. I—I don't—I think he can talk about where he walked.

*The Court*. I think he can talk about where he walked. I don't have an issue with that.

[*Plaintiff's attorney*]. I—I agree, but, again, if it's going to get to the point where we're trying to establish his understanding by hearsay—

*The Court*. Well, let's try and establish by some other—another—another way, but he can talk about what he walked.

Plaintiff asserts that after this colloquy, defendants did not establish a foundation for Russell's statement, as instructed by the court. We disagree. After the court directed defendants' counsel to lay a foundation for the statement, defendants' counsel questioned Russell about where he walked on the Obrinske property at the time of sale. Further, Russell testified that after his father bought the Obrinske property, he cleared all the underbrush in the entire fencerow, and that it took him two winters to get it all cleared up. At the time he was clearing the fencerow, he understood that it was part of the Obrinske property. When plaintiff's attorney again objected on the grounds that Russell's understanding was based on a hearsay statement, the court noted that an alternative foundation had been established, stating, "At this point, he was discussing the fact that he had cleared the brush in the entire fencerow. If that's his understanding of what the property line was, I think that that's a fair assessment based upon his actions."

Russell also testified that he started residing on the Obrinske property when he was 18 years old, and lived on the property for 64 years before he sold it to defendant Walter. He testified that he hunted the entire fencerow and had never seen anyone else hunting in it, he did

not pay attention to the fence in the fencerow, and that no one ever told him that he did not own the entire fencerow. According to Russell, when he conveyed the Obrinske property to defendant Walter, he intended to convey the entire fencerow to him. Accordingly, there are sufficient facts, apart from the hearsay that was stricken, to support Russell's understanding of the ownership of the fencerow.

Plaintiff also incorrectly argues that the trial court considered Russell's "inadmissible hearsay statement" in reaching its findings. First, the trial court stated, "Russell Obrinske testified that he had walked the property with his father when it was purchased in 1951 and that they walked the east side of the fencerow. He understood the entire fencerow to belong to his family." Plaintiff fails to point out which part of the statement constitutes hearsay. The trial court properly relied on Russell's statement that he walked the property with his father during the purchase as Russell was testifying about an act he did and witnessed. Regarding Russell's understanding that the entire fencerow belongs to his family, plaintiff isolates this statement and fails to mention the preceding statement where the court stated that Russell "further testified that he had hunted the fencerow and cleared brush for the entire wooded area." Because Russell could testify about the actions he performed on the property to support his belief, the trial court did not abuse its discretion in relying on the statement.

Second, in its findings, the trial court simply stated, "Defendant's [sic] on the other hand presented evidence that upon purchase, it was the families['] understanding that they owned the entire fencerow." There is no mention of Russell in the relevant portion of the trial court's findings. Defendants and their witnesses testified that they understood that the fencerow belonged to defendants based on the activities they conducted in the fencerow. As the trier of fact, the trial court was free to choose which testimony to believe and rely on.

Accordingly, the trial court did not abuse its discretion in the admission of Russell's testimony, where it properly excluded the hearsay testimony, and allowed and relied on non-hearsay testimony.

## B. STATUTORY ACQUIESCENCE

Plaintiff also argues that the trial court misapplied the relevant law and ruled contrary to the great weight of evidence by concluding that the proofs failed to establish that plaintiff acquired title to the disputed strip of land by acquiescence. We disagree.[5]

"[A]cquiescence to a boundary line may be established where the line is acquiesced in the statutory period [of 15 years] irrespective of whether there has been a bona fide controversy regarding the boundary." *Sackett*, 217 Mich App at 681; MCL 600.5801(4). According to this Court,

---

[5] Actions in quiet title are equitable in nature, and reviewed by this Court de novo. *Wengel v Wengel*, 270 Mich App 86, 91; 714 NW2d 371 (2006). We review for clear error a trial court's findings of fact in a bench trial and review de novo its conclusions of law. *Ligon v Detroit*, 276 Mich App 120, 124; 739 NW2d 900 (2007).

> This theory of acquiescence does not require that possession to be hostile or without permission as would an adverse possession claim. . . . Although Michigan precedent has not defined an explicit set elements necessary to satisfy the doctrine of acquiescence, caselaw has held that acquiescence is established when a preponderance of the evidence establishes that the parties *treated* a particular boundary line as the property line. [*Mason v City of Menominee*, 282 Mich App 525, 529-530; 766 NW2d 888 (2009) (quotation marks and citations omitted).]

The touchstone of the application of the doctrine of acquiescence is the existence of an agreed line or boundary line. *Wood v Denton*, 53 Mich App 435, 439; 219 NW2d 798 (1974).

There is no evidence that *both parties agreed* that the fence was the boundary line between the properties, and treated it as such. *Walters v Synder*, 239 Mich App 453, 458; 608 NW2d 97 (2000). Viewing the evidence as a whole, as opposed to examining the various occurrences in isolation, the conduct of the parties did not establish that they treated the fence as a boundary line. Rather, the evidence shows that while plaintiff assumed that the fence was the boundary line, defendants understood that they owned the entire fencerow and acted accordingly.

Plaintiff points out that he and others believed that his land ran all the way to the old fence. He testified that his family conducted farming activities very close to the fence line, that he placed rocks along the fence line, that he had tree stands on the trees in the fencerow, and that he allowed his friends to cut timber from the disputed strip of land. He further testified that defendants never objected to these activities. A neighbor testified that he had been leasing the Bahmer property for farming since 1999, and had farmed very close to the tree line because he assumed that the fence line was the boundary line between the two properties. Plaintiff's brother testified that he had access to the disputed property all his life, hunted on it, stuck round bales far into the fence line, cultivated the land, placed rocks from the Bahmer field into the disputed strip of land next to the fence, posted signs, and pushed dead branches and debris from the Bahmer field into the fence line. Other witnesses testified similarly.

However, plaintiff did not establish that defendants treated the fence as the boundary. Rather, the evidence presented demonstrated that defendants believed that the fencerow and the disputed strip of land belonged to them, did not treat the fence as the property line, and took steps to protect their property interest in the fencerow.[6] Plaintiff offered no evidence that defendants' predecessors treated the fence as the boundary line between the two properties. Defendant Walter testified that he had lived on the Obrinske property since his birth in 1957. He hunted the entire fencerow and had never seen anyone from plaintiff's family hunting in the fencerow. He testified that he treated the fencerow as his property, and that no one had ever challenged his property interest in the fencerow. Similarly, defendants' ex-wife testified that she lived in the Obrinske property from 1990 to 1996 during which time she understood that the

---

[6] Because a claim to a boundary line may be established irrespective of whether there has been a bona fide controversy regarding the boundary, *Sackett*, 217 Mich App at 681, we need not discuss the steps defendants took in asserting their ownership interest in the fencerow.

entire fencerow was owned by defendants. She also testified that her uncles used to hunt the entire fencerow, made little shacks that he put in the entire fencerow, placed blinds in the tree line, and that she was never told not to get past the trees. Defendant Kari testified that she moved into the Obrinske property in 2008 and hunts in the fencerow. She also testified that the only people she has seen hunting in the fencerow were their friends and family members, and not anyone from the plaintiff's property. Other witnesses testified that they hunted the fencerow and had never seen anyone from plaintiff's family in the fencerow. All the witnesses testified that they believed that the fencerow belonged to defendants because the existence of the fence did not determine their activities in the fencerow.

In support of its argument that the existence of the fence alone establishes the boundary line between the two properties, plaintiff cites *Escher v Bender*, 338 Mich 1, 5; 61 NW2d 143 (1953), where the Michigan Supreme Court stated, "When a boundary line between adjacent parcels of land is established by a fence or other marker and the line so established is acquiesced in by the owners of the adjacent parcels, it has been held that the line becomes the actual boundary line of the properties and will not be exchanged even though a subsequent survey shows error." However, plaintiff's reliance on *Escher* is misplaced. First, the existence of a fence alone is not prima facia evidence of a boundary line. Rather, the party claiming the fence as boundary must provide evidence that both parties acquiesced to treat and treated the fence as a boundary line. See *Chapman v Crooks*, 41 Mich 595, 597; 2 NW 924 (1897) (stating that "[i]t was not shown that the adjacent proprietors had ever agreed that the line of this bush fence should be considered as the correct boundary line between them, or that a survey had been made and the fence built in accordance therewith"); and *Walters v Synder*, 239 Mich App 453, 459; 608 NW2d 97 (2000) (holding that the relevant inquiry is how the parties treated a feature on the property). Second, plaintiff agrees that no one knows when the fence was constructed or the reason it was constructed. The only testimony regarding the construction of the fence was from defendant Kari who described it as a livestock fence and not a boundary line fence. Similarly, a neighbor testified that he had a similar fence on his property and that these fences were customarily used to retain livestock and not to define boundary perimeters. In addition, the fence as it exists today is in disrepair, in pieces, and lying on the ground. Defendants and their witnesses testified that they ignored the fence and that it did not affect their activities in the fencerow.

In sum, the trial court did not improperly admit or rely on hearsay and plaintiff failed to establish that defendants or his predecessors had acquiesced to the boundary claimed by plaintiff.

Affirmed. Defendants may tax costs as prevailing party. MCR 7.219.

/s/ Jane E. Markey
/s/ Douglas B. Shapiro
/s/ Michael F. Gadola