*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

WILLIAM ALLEN and DEBRA GUIDO-ALLEN,

Plaintiffs-Appellees,

UNPUBLISHED
February 24, 2022

v

ROBERT A. NOFZ and MELANIE NOFZ,

Defendants-Appellants.

No. 355145
Washtenaw Circuit Court
LC No. 19-000704-ND

Before: CAVANAGH, P.J., and JANSEN and RIORDAN, JJ.

PER CURIAM.

Defendants appeal as of right the trial court's order quieting title in favor of plaintiffs to a strip of land between defendants' property and plaintiffs' property. Defendants argue that the trial court erred in concluding that plaintiffs acquired ownership of defendants' land through acquiescence and adverse possession. Because plaintiffs' uncontested evidence shows that plaintiffs, defendants, and defendants' predecessors acquiesced in a certain boundary for over 15 years, the trial court correctly concluded that this boundary become the actual boundary as a matter of law. Accordingly, we affirm.

## I. FACTS

This case arises from a dispute between next-door neighbors over the boundary line between their respective properties. Plaintiffs and defendants each own adjacent parcels of land on a lake. Plaintiff Debra Guidot-Allen has lived on her parcel since 1982. Defendants moved to their parcel in 2011. Before defendants, Kerry MacVay and Joan MacVay lived on defendants' parcel from 1998 until 2011. Before the MacVays, Glenford Hanson and Dorothy Hanson lived on defendants' parcel from 1981 until 1998.

In 2018, defendants decided that they wanted to plant a row of arborvitaes along the edge of the property line that they shared with plaintiffs, and had a survey conducted to determine the property line. After the survey, defendants realized that several encroachments existed from plaintiffs' property that would prevent them from planting the arborvitaes. The encroachments

included landscaping, a well, a brick path, and two trees. Defendants' attorney notified plaintiffs that defendants planned to remove these encroachments so that defendants could plant their arborvitaes. Plaintiffs sued, arguing that the actual property line was four or five feet over from the legally described property line on defendants' property. Plaintiffs alleged that the property line had changed through adverse possession and acquiescence. Also, plaintiffs alleged that they had acquired a prescriptive easement through their encroachments.

Plaintiffs provided evidence indicating that from 1982 until 2018, members of plaintiffs' household, defendants, and defendants' predecessors acted as if the property line were a straight line running from a fence post on the road in front of their respective properties to the edge of plaintiffs' garden on the lake shore. To demonstrate the location of this line, which the parties refer to as "the historic boundary," plaintiffs provided a survey of their property and defendants' property. The survey indicated the historic boundary line was about 114 feet long, and 4 or 5 feet over from the legally described property line. In the area between the historic boundary line and the legally described property line (the disputed area), the survey showed there was a brick path, a well, a cherry tree, a cypress tree, a garden, and an underground water line and electric line. Half of the well was in the disputed area, the brick path encroached about 1.6 feet into the disputed area, the garden by the lake shore encroached about 5 feet in the disputed area, and the trees and underground water line were all completely within the disputed area. Affidavits provided by plaintiffs showed that they, or members of their household, installed these encroachments.

Debra[1] attested that neither defendants nor defendants' predecessors ever gave members of plaintiffs' household permission to use the disputed area. According to Debra, during this period, only plaintiffs, or members of their household, maintained the disputed area. She attested that defendants, the MacVays, and the Hansons had instructed their lawn servicers to adhere to the historic boundary when mowing defendants' lawn. According to Debra's children, Geoffrey Rhodes (Geoffrey) and Allissa Simmons (Simmons), when they would cut the MacVays' lawn for them, the MacVays would instruct them to cut the lawn up to the historic boundary, and not the legally described boundary. Geoffrey and Simmons also attested that the Hansons were strict about enforcing the historic boundary as the property line.

As noted, plaintiffs, or members of their household, installed the brick path, the well, the cherry tree, the cypress tree, the garden, and the underground water line and electric line at different points between 1974 and 2018. Debra attested that only she, or members of her household, maintained this garden. In 1988, Debra laid down the brick path, and again, Debra attested that only she, or members of her household, maintained this path. In 1988, Debra planted the cherry tree inside the disputed area, which she has exclusively maintained until the present. In 1999, Debra had the well installed after Washtenaw County issued her a permit for the well that year. A year later, plaintiffs installed the underground electric line and water line in the disputed area. According to plaintiffs and Geoffrey, Kerry MacVay rented a "walk behind trencher" to help plaintiffs install these lines. Debra attested that the well and underground lines serve plaintiffs' property exclusively. Although the electric line and water line were underground, the electric line

---

[1] Because many of the relevant people in this case share the same last name, we will use first names when necessary for clarity.

connected to an electric outlet in the garden by the lake shore, and the water line connected to a pump in the garden by the lake shore. Finally, in 2014, Geoffrey planted the cypress tree in the garden by the lakeside. Debra attested that defendants did not object to Geoffrey's doing so.

After plaintiffs sued to quiet title to the disputed area, defendants moved for summary disposition under MCR 2.116(C)(5), (7), (8), and (10). Defendants argued that plaintiffs failed to show that (a) they adversely possessed the disputed area, (b) the parties acquiesced to the historic boundary, and (c) they were entitled to a prescriptive easement. As to plaintiffs' acquiescence claim, defendants argued that the doctrine of acquiescence could apply only if there was a previous dispute regarding the true boundary line that the parties had settled. As to plaintiffs' adverse possession claim, defendants argued that plaintiffs' pleadings indicated that both defendants and plaintiffs used the disputed area, thus plaintiffs failed to allege that they had exclusive use of the disputed area. Finally, defendants argued that plaintiffs failed to allege a factual basis for their prescriptive easement claim. For those reasons, defendants asked the trial court to dismiss plaintiffs' case.

In response, plaintiffs filed a cross-motion for summary disposition under MCR 2.116(C)(10). Plaintiffs attached witness affidavits, photographs of the disputed area, and a survey of the disputed area. Citing this evidence, plaintiffs argued that they satisfied all of the elements of adverse possession and acquiescence and were entitled to judgment as a matter of law. They argued that the evidence showed that plaintiffs, defendants, and defendants' predecessors, treated the historic boundary as the actual boundary from 1982 until 2018, and that plaintiffs were the only ones who used the disputed area. Defendants did not file any evidence to contest plaintiffs' evidence.

After a hearing on the competing motions for summary disposition, the trial court ruled that plaintiffs were entitled to judgment as a matter of law for the reasons argued in plaintiffs' cross-motion. It later entered a final order awarding title of the disputed area to plaintiffs. This appeal followed.

On appeal, defendants argue that the trial court erred in determining that plaintiffs were entitled to judgment as a matter of law on plaintiffs' adverse possession and acquiescence claims. Because we conclude that the trial court correctly determined that plaintiffs were entitled to judgment as a matter of law on their acquiescence claim, we need not address the other issues defendants raise on appeal.

## II. ANALYSIS

"An action to quiet title is an equitable action that we . . . review de novo." *Beach v Twp of Lima*, 489 Mich 99, 106; 802 NW2d 1 (2011). Likewise, we review de novo a trial court's decision whether to grant a motion for summary disposition. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of a plaintiff's claim. *Gorman v Am Honda Motor Co, Inc*, 302 Mich App 113, 115; 839 NW2d 223 (2013). When reviewing a motion under MCR 2.116(C)(10), we consider the evidence in the light most favorable to the nonmoving party. *Id.* at 115. Summary disposition is proper under MCR 2.116(C)(10) if " 'there is no genuine issue regarding any material fact and the moving party is entitled to judgment

as a matter of law.' " *Id.* at 116 (citation omitted). There is a genuine issue of material fact " 'when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ.' " *Id.* (citation omitted).

"Under Michigan law, property owners may acquiesce to a new property boundary line." *Houston v Mint Group, LLC*, 335 Mich App 545, 567; 968 NW2d 9 (2021). "The underlying reason for the rule of acquiescence is the promotion of peaceful resolution of boundary disputes." *Killips v Mannisto*, 244 Mich App 256, 260; 624 NW2d 224 (2001). For that reason, "[o]ur Supreme Court has repeatedly held that a boundary line long acquiesced in and treated as the true line should not be disturbed on the basis of new surveys." *Houston*, 335 Mich App at 568. Unlike with adverse possession, a claimant need not show "that possession of the land was hostile or without permission." *Id.* Also, "[t]he acquiescence of predecessors in title can be tacked onto that of the parties in order to establish the mandated period of fifteen years." *Killips*, 244 Mich App at 260.

First, defendants argue that the trial court failed to differentiate between the doctrine of adverse possession and the doctrine of acquiescence. Specifically, defendants contend that the two doctrines are "not compatible." We disagree. This Court has explicitly held that "[t]he law of adverse possession is not at odds with the law of acquiescence." *Kipka v Fountain*, 198 Mich App 435, 439; 499 NW2d 363 (1993). Under the same set of facts, a party may be entitled to relief under both adverse possession and acquiescence. See *Houston*, 335 Mich App at 549.

Second, defendants argue that plaintiffs failed to show that they were entitled to judgment as a matter of law on their acquiescence claim. This is because, defendants argue, acquiescence applies only if there was a "bona fide dispute as to the true boundary line and thereafter the parties . . . reach[ed] a friendly settlement to the dispute." We disagree.

There are three theories under which a party may establish acquiescence to a new boundary line: "(1) acquiescence for the statutory period; (2) acquiescence following a dispute and agreement; and (3) acquiescence arising from intention to deed to a marked boundary." *Sackett v Atyeo*, 217 Mich App 676, 681; 552 NW2d 536 (1996). A claim of acquiescence for the statutory period—the first theory—requires a showing by a preponderance of the evidence that the adjoining property owners treated a boundary line or marker as the property line continuously for 15 years. *Houston*, 335 Mich App at 567 ("Acquiescence is established when a preponderance of the evidence establishes that the parties treated a particular boundary line as the property line.") (cleaned up).[2] To prevail under the first theory, a party need not show that he or she had an explicit agreement as to the boundary line with the adjoining property owner. See *id.* Rather, an agreement as to the boundary line may be implied by the parties' conduct. *Id.*

In *Houston*, the adjoining landowners apparently never had any spoken or written agreement as to the governing boundary line. See *id.* at 570. Nonetheless, this Court held that the landowners acquiesced to a boundary because they both treated it as the actual boundary between their properties for at least 33 years. *Id.* In that case, a retaining wall separated the adjacent properties, and it extended over the legal boundary line onto the defendant's property. *Id.* at 549.

---

[2] MCL 600.5801(4) provides that the period of limitations is 15 years.

-4-

The plaintiff provided evidence that she, and her parents, maintained a garden on their side of the retaining wall since 1952. *Id*. at 551. In addition, the plaintiff provided an affidavit from one of the defendant's predecessors, in which the predecessor averred that for 33 years she believed that the retaining wall was the boundary line between the properties, treated the retaining wall as the boundary, and knew that the plaintiff, and the plaintiff's parents, maintained a garden on the other side of the retaining wall, and did not object to them doing so. *Id*. at 570. On the basis of this evidence, this Court held that the plaintiff established that both parties acquiesced to the retaining wall boundary as a matter of law. *Id*. at 570-571.

Like the plaintiff in *Houston*, plaintiffs in this case established that the parties acquiesced to the historic boundary for the 15-year statutory period as a matter of law. Debra averred that from 1982 until 2018, plaintiffs, members of plaintiffs' household, defendants, and defendants' predecessors, all recognized the property line to be the historic boundary line: a straight line running from the end of the fence post at the road in front of the properties to the end of the lake front garden. She also averred that plaintiffs, and members of plaintiffs' household, were the only ones who maintained the disputed area during this period: they mowed the lawn, landscaped, and installed underground utility lines, a portion of a well, and a portion of a brick path. Further supporting plaintiffs' case, Geoffrey and Simmons averred that during the 1990s, the Hansons strictly enforced the historic boundary—not the legally drawn boundary—when trying to keep children off their property. In the same vein, when Geoffrey and Simmons would mow the MacVays' lawn, when they owned what is now defendants' property, the MacVays would instruct Geoffrey to cut the lawn up to the historic boundary. Finally, Debra attested that from 2011 until 2018, defendants had their lawn contractors mow their lawn up to the historic boundary.

Defendants failed to put forth any evidentiary issues to contest plaintiffs' evidence.[3] Consequently, the trial court concluded that defendants failed to establish a genuine issue of material fact. Thus, on the basis of the facts adduced by plaintiffs, the trial court correctly ruled that plaintiffs were entitled to judgment as a matter of law as to their acquiescence claim. Without dispute, plaintiffs have shown that plaintiffs, defendants, and their predecessors in ownership, treated the historic boundary as the actual property line for the requisite statutory period. Because the historic boundary became the legal property line through acquiescence, plaintiffs gained title to all property on their side of that line.

### III. CONCLUSION

There were no errors warranting relief. We affirm.

/s/ Mark J. Cavanagh
/s/ Kathleen Jansen
/s/ Michael J. Riordan

---

[3] Defendants' attorney argues in his brief on appeal that defendants used the trees in the disputed area, but defendants offered no evidence to support this assertion. See *Sherman v Sea Ray Boats, Inc*, 251 Mich App 41, 56; 649 NW2d 783 (2002) ("This Court's review is limited to the record established by the trial court, and a party may not expand the record on appeal.").