*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MICHAEL D. HOLMES and MARY JANE
HOLMES, Individually and as trustees of the
MICHAEL D. HOLMES AND MARY JANE
HOLMES REVOCABLE TRUST,

UNPUBLISHED
December 21, 2023

Plaintiffs-Appellees,

v

No. 364145
Mecosta Circuit Court
LC No. 2019-025060-CH

JAMES J. MUELLER and JODY LYNN
MUELLER, Individually and as trustees of the
JAMES JOSEPH MUELLER AND JODY LYNN
MUELLER TRUST,

Defendants-Appellants.

Before: FEENEY, P.J., and RICK and HOOD, JJ.

PER CURIAM.

Defendants appeal from a judgment of the circuit court in favor of plaintiffs following a bench trial on their complaint to quiet title to certain real estate located in Morton Township, Mecosta County. We affirm.

A number of witnesses testified at trial, beginning with plaintiff Michael Holmes ("Michael"). He testified that he and his late wife resided on Lot 75 of the Oak Park 3 plat for 32 years. He purchased the lot, along with Lot 76, in 1990. He did not have the property surveyed at the time of purchase, though he was shown one by the sellers. Lots 77 and 78, currently owned by defendants, was at that time owned by one Mike Markey. In 1992, Michael employed a contractor to build a channel seawall along both parcels. Markey went bankrupt and the Bellingers purchased the property out of bankruptcy in 1993. Two years later, the Bellingers sold the property to Dennis Lysakowski. Dennis' parents, Don and Mary, moved onto the property in 1995, living with Dennis. The Lysakowskis made a number of improvements to the property.

-1-

The Lysakowskis approached Michael to sell Lot 76 so they could build a garage to provide better access to their property.[1]  Apparently after the garage was built, rain runoff from the garage roof started to cause erosion.  Around this same time, two or three years after the purchase, Dennis had moved to Lansing and his sister, Diane, was now living with the parents.  The father and daughter did landscaping on the property, including putting in what the parties refer to as a "stone ravine" in order to combat the erosion.  It is this stone ravine that is the subject of the location of the property line.  Michael testified that he took care the area between his house and the stone ravine, while Don took care of the land on the other side of the ravine. At some point after defendants bought the property, they removed the stones and put up a wall to deal with the runoff.

Michael testified that when he bought the property, he did not know where the lot line was other than the seller pointing it out to him.  He testified that he did know where the lot line between Lot 76 and Lot 77 was at the channel because it was shown on the permits issued by the Department of Natural Resources for the seawall.  He further testified that if he had known where the lot line between Lot 75 and Lot 76 actually was, he would have sold only a portion of the lot to Lysakowsi, only enough for the garage to be built.  On cross-examination, Michael testified that they had a surveyor, Tom Sage, try to locate the lot line, but that Sage was unable to find the boundary-line stake, but thought it should be near a large red oak tree.  Don Lysakowski was also present and they agree the boundary line was probably by a pipe with a ring in it.  Dennis Lysakowski was not part of the conversation. Michael also testified on cross-examination that defendants had put a snow fence along the boundary line, which Michael left undisturbed. He further testified on redirect that Dennis had provided his parents with plants that were planted only on defendant's side of the ravine.

Thomas Sage, a licensed land surveyor, testified regarding his survey of the property.  He testified that he was retained by Michael in 2011 to locate the lot corners so that Michael could cut down trees and wanted to be sure to only cut down trees on his own property. He testified that there were "a series of lot corners on the northern part of his lots I could not find."  He also testified that he did not set any stakes on the boundary line between lots 75 and 76.  Sage has subsequently returned to the property, retained by defendants to set the boundary line between the two properties.  He stated that, consistent with current surveying standards, he set the required "irons" in the ground at the lot corners.[2]  He further testified that another firm also subsequently surveyed the property and that survey agreed with his own.

Next, Joseph Sheffer testified.  He had worked for Michael doing yard work.  He stated that he did yard work for Michael beginning in 2015 and did the work on plaintiffs' side of the stone ravine.  He did the yard work weekly between 2015 and 2017, then sporadically in 2018.  He

---

[1] According to Michael, he sold Lot 76 to Don and Mary, but learned from his attorney that they had thereafter transferred the property to Dennis.

[2] He described the "irons" as being a requirement by statute that iron markers, one-half inch in diameter and 18 inches long, be set in the ground at the corners.  He testified that surveyors might also leave a wood stake above the ground to be easily seen.

further stated that the lawns were noticeably different on the two sides of the ravine and that he understood the ravine to be the property line.

Christopher Bennett testified that his mother had owned a house about one-half mile from the subject property. He cut some trees for plaintiff in 2017 and did other work on the property ever since. In doing the work, Michael told him not to cut any trees on the other side of the ravine (i.e., defendant's side) because that was someone else's property.

Jody Mueller testified that she and her husband purchased their property in 2015. Specifically, they purchased Lots 76, 77, 78, and 79. She testified that plaintiffs had never indicated that they had an agreement with Dennis Lysakowski regarding the boundary line nor did defendants acquiesce to a new boundary line. She further testified that since purchasing the property in 2014, defendants took care of the area on plaintiffs' side of the stone ravine. She also testified that since purchasing the property she had not seen plaintiffs or anyone working for plaintiffs do any maintenance on the side of the stone ravine on plaintiff's side.

Defendants called Dennis Lysakowski as a witness on their behalf. He testified that while they owned Lot 76, he and his father maintained the property on both sides of the stone ravine. At no time did plaintiffs claim that the area was their property. He also stated that he never had an agreement with plaintiffs where the boundary was nor did he ever hear Michael definitively say where the boundary was. As for a pipe with a ring it, Lysakowski stated he thought it might mark the boundary line, but that Michael stated that it was not.

Defendant James Mueller testified regarding the boundary line between the properties. He testified that wife had spoken with plaintiffs' daughter-in-law in 2017, but he had not spoken with Michael until later. He testified that he and his wife measured from the marker on Lot 78 the 85 feet which was distance to the corner of Lots 77 and 76. The result of his measurement suggested that there was a problem with encroachments which caused him to have the surveyor, Thomas Sage, survey the property in November of 2017. They had a second survey done, which matched the first. The parties did meet to discuss a resolution, but that was unsuccessful and this litigation ensued. He further testified that since owning the property it was only defendants that maintained the property on both sides of the stone ravine. And he testified that no survey was done when he purchased the property.

Following a two-day bench trial, the trial court ruled against plaintiffs on their claim based upon adverse possession, but ruled in their favor on their claim based upon acquiescence. With respect to latter claim, the trial court opined as follows:

> It would appear to this Court that due to the confusion between the parties as to the actual boundary line at the time of the deed to Don and Mary Lysakowski, it could be construed that the Plaintiff's [sic] were not aware of the exact Lot line for Lot 76 and were unaware of exactly what they deeded to the Lysakowski's [sic]. As further evidence of this, the Plaintiff's [sic] and the Lysakowski's [sic] mutually shared the waterfront area and never disputed that the Plaintiff's [sic] could use the portion of Lot 76 they maintained. It should further be noted that Dennis Lysakowski never indicated the the Plaintiff's [sic] could not use the portion of Lot 76 that they maintained after his parents deeded the property to him.

This Court would also note that improvements were made to the Plaintiff's [sic] home in 2002. A survey done indicates that part of the improvements encroached on Lot 76. There was no testimony presented that indicated any claims or complaints were made that the improvements were on a portion of Lot 76. This again would be evidence to this Court that there was acquiescence to a boundary line someplace other than at the Lot line of Lot 75.

The statutory period for acquiring property by acquiescence is 15 years. MCL 600.5801(4). This Court believes this time period clearly has been met.

The burden of proof as to acquiescence is preponderance of the evidence. As such, this Court believes the Plaintiffs have met their burden of proof under the theory of Acquiescence.

The trial court therefore granted plaintiffs title to that portion of Lot 76 which lies west of the stone ravine. Defendants appeal and we affirm.

Defendants filed a combined motion for JNOV and new trial, which the trial court rejected. At the hearing on the motion, the trial court opined as follows:

I will tell you that this Court took more than a day, about two days over a weekend and rewatched the entire trial because this was during the time that we were doing YouTube videos and I recorded the entire trial. I rewatched the entire trial as I was making a decision in this case which is something that until recently, we did not have the ability to do. Until covid, we didn't have the ability to rewatch and re-remember all of the testimony that was provided to the Court before making a decision which I think is a great thing that the courts can do now.

While I was writing my opinion I could re-listen to testimony. I didn't have to remember it. I didn't have to have a transcript. I could literally watch the people re-testify so that the only thing that this Court considered was the testimony that was presented to me at the trial. Not all these other deposition transcripts that were presented as part of your argument, which I don't think are relevant to this Court's—for this motion today because I never saw these deposition transcripts.

So based on that, the motions that have been brought today is as I indicated a Motion Notwithstanding the Verdict in the case and I do not believe that the— well, I'm not going to grant the motion in regards to the motion for judgment notwithstanding the verdict. I'm also not going to grant a new trial in this matter. I don't think that the defendants in this case have met their burden to indicate to this Court that the decision in this case was against the great weight of the evidence or there was some sort of a miscarriage of justice done during the trial.

As I indicated, I re-watched all of the testimony before making a decision in this case. I believe that this Court as I indicated, I took two days to make a decision and reviewed the law, reviewed the testimony, and I believe also I'm going—well, I'm also going to indicate that in regards to the argument unclean hands, I do not think that that is an appropriate argument as well.

I think it was clear from the testimony from Mr. Holmes that when he sold lot 76, he didn't know where the boundary line was. Then to argue that he started trying to take the property back, I don't think that that—I think that argument fails. I clearly believe his testimony from the trial that he didn't know where the boundary line was. Based on that, the parties started treating shortly after that when this ravine was put in place, the parties started to, and that was Don Lysakowski and Mr. Holmes treating the boundary line in this case as or the ravine in this case as the boundary line. Each side taking care of and maintaining the ravine area.

There was very, very, very limited testimony in this case about this pole with a ring on it and I find it interesting that the argument today is that now it needs to be this ring. That never was argued. Nobody ever said, hey, if you're going to find a property line being different than the survey, it needs to be that ring because that's what the parties were using. I find it interesting now that it comes in this motion that it's this pipe with a ring. There was extremely limited testimony regarding it. All of the testimony in this case was the boundary line being the ravine that was established shortly after the sale of the property.

And I think clearly based on that, that the 15-year time period had been established in this Court's mind. Therefore, whether we call it a motion for judgment notwithstanding the verdict or for a motion for a new trial, I do not believe that the defendants in this case have met their burden of proof. My opinion and the judgment in this case will stand.

Defendants argue that the trial court erred both in denying the JNOV and a new trial. We disagree.

Our Supreme Court summarized the standards of review for motions for JNOV in *Craig v Oakwood Hosp*, 471 Mich 67, 77; 684 NW2d 296 (2004):

We review de novo a trial court's decision to grant or deny a motion for judgment notwithstanding the verdict. In conducting this review de novo, we "'review the evidence and all legitimate inferences in the light most favorable to the nonmoving party.'" Only when "the evidence viewed in this light fails to establish a claim as a matter of law" is the moving party entitled to judgment notwithstanding the verdict (JNOV). [Citations omitted.]

The parties submitted evidence that supported their claims and contradicted the opposing parties' claims. And the evidence certainly did not overwhelmingly support plaintiffs' position. But the standard is not whether the prevailing party overwhelmingly made their case, but whether the evidence viewed in the light most favorable to the prevailing party nevertheless fails to establish the claim as a matter of law. We cannot say that that is the case here.

There are three theories that fall under the doctrine of acquiescence: (1) acquiescence for the statutory period; (2) acquiescence following a dispute and agreement; and (3) acquiescence arising from intention to deed to a marked boundary. *Sackett v Atyeo*, 217 Mich App 676, 681; 552 NW2d 536 (2006). The trial court's analysis reflects that it relied upon the first theory in

reaching its decision. This Court elaborated on this theory in *Kipka v Fountain*, 198 Mich App 435, 438-439; 499 NW2d 363 (1993):

> The law of acquiescence is concerned with a specific application of the statute of limitations to cases of adjoining property owners who are mistaken about where the line between their property is. Adjoining property owners may treat a boundary line, typically a fence, as the property line. If the boundary line is not the recorded property line, this results in one property owner possessing what is actually the other property owner's land. Regardless of the innocent nature of this mistake, the property owner whose land is being possessed by another would have a cause of action against the other property owner to recover possession of the land. After fifteen years, the period for bringing an action would expire. The result is that the property owner of record would no longer be able to enforce his title, and the other property owner would have title by virtue of his possession of the land.

The trial court cited the confusion of the parties over where the actual boundary line was,[3] as well as the fact that plaintiffs maintained a portion of Lot 76 without objection by the Lysakowskis, including both Dennis and his parents. And the court also noted that the subsequent survey revealed that an improvement to plaintiffs' property made in 2002 encroached into Lot 76, but without the Lysakowski's complaint..[4]

Defendants argue that the trial court erred because there was no evidence that Dennis Lysakowski treated the stone ravine as the property line for fifteen years while he was the title holder.[5] But this overlooks the trial court's determination that Dennis "never indicated that the Plaintiff's [sic] could not use the portion of Lot 76 that they maintained after his parents deeded the property to him." It also overlooks the principle that the agreement over where the boundary line is may be tacit rather than overt. *Houston v Mint Group, LLC*, 335 Mich App 545, 568; 968 NW2d 9 (2021). The testimony presented by plaintiffs would support the conclusion that the Lysakowskis, including Dennis, accepted that plaintiffs maintained that portion of Lot 76 on their side of the stone ravine and the Lysakowskis maintained the portion on their side of the ravine, thus reflecting a tacit agreement that the stone ravine was the property line.

Defendants also argue that the evidence does not support the parties treating the stone ravine as the boundary line because it was put in place to address the erosion issue. While this is certainly a strong argument on behalf of defendants, it apparently is one not accepted by the trial court. Moreover, it is not the definitive argument that defendants believe it to be. The relevant question is not whether the stones were placed as a monument to reflect the property line, but

---

[3] We additionally note that it was not until sometime after plaintiffs deeded the lot to defendants' predecessors in title that the property line was actually surveyed.

[4] Defendants did raise the issue after having had their own survey done some time after their purchase of the property.

[5] Again, plaintiffs convey Lot 76 to Don and Mary Lysakowski in February 1997. Don and Mary then conveyed the property to Dennis in December 1997. Dennis was the titled holder until he convey his interest to the mortgagee in February 2015.

rather whether the neighboring property owners treated it as being the property line. And the trial court concluded that they did.

Finally, defendants point to various evidence offered in the trial court that supports their position. While that evidence certainly supports defendants' position and could ultimately have justified a decision in defendants' favor rather than in plaintiffs' favor, ultimately the trial court did not reach that conclusion. But whether we look to defendants' discussion regarding the iron pipe, an argument that got little attention until the motion for JNOV, or the extent to which Dennis was involved with property after he became the title holder, we find guidance in this Court's decision in *Walters v Snyder*, 239 Mich App 453, 457-458; 608 NW2d 97 (2000), where we observed the following:

> Michigan precedent, however, has not defined an explicit set of elements necessary to satisfy the doctrine of acquiescence. Rather, the courts have discussed the doctrine in more general terms. For example, our Supreme Court has noted: "It has been repeatedly held by this court that a boundary line long treated and acquiesced in as the true line ought not to be disturbed on new surveys.... Fifteen years' recognition and acquiescence are ample for this purpose." *Johnson v Squires*, 344 Mich 687, 692; 75 NW2d 45 (1956), quoting *Dupont v Starring*, 42 Mich 492, 494; 4 N.W. 190 (1880) (citations omitted). This Court has most recently indicated that applicability of the doctrine commonly arises where "[a]djoining property owners [mistakenly] treat a boundary line, typically a fence, as the property line." Sackett, supra at 681–682, quoting *Kipka v Fountain*, 198 Mich App 435, 438; 499 NW2d 363 (1993).

> These and other cases have merely inquired whether the evidence presented establishes that the parties treated a particular boundary line as the property line. We conclude, therefore, that in focusing its analysis on the necessity of demonstrating plaintiff's notice of an objective transaction continuously in evidence, the trial court appears to have required a level of specificity in the parties' perceptions and behavior not demanded by those cases previously applying the doctrine. Viewing the evidence as a whole, as opposed to examining the various occurrences in isolation, the conduct of the parties establishes that while a precise line was never acknowledged, the boundary was understood to have run along a line approximated by the bushes. Thus, in the absence of the heretofore unnecessary "element" that appears to have guided the trial court's analysis, we believe that a preponderance of the evidence demonstrates that the parties "treated" the bush line as the approximate property line.

The trial court focused on the picture as a whole, rejecting defendants attempt to focus on individual facts or events (or lack thereof). The trial court's broader perspective was the correct one.

Even if defendants are able to persuade this Court that, had we sat as the trial court, we would have ruled in defendants' favor, we were not the trial court. As noted above, JNOV is appropriate only when the evidence, viewed in the light most favorable to the nonmoving party,

would conclude that the claim fails as a matter of law. in *Craig*, 471 Mich at 77. That is a high burden to meet. The trial court was not persuaded that defendants met that burden, nor are we.

As for defendants' motion for a new trial, the same analysis applies to that issue as above. We review the trial court's decision on a motion for new trial for an abuse of discretion. *Kelly v Builders Square, Inc*, 465 Mich 29, 34; 632 NW2d 912 (2001). "An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *Smith v Khouri*, 481 Mich 519; 751 NW2d 472 (2008). For the same reasons that we reject defendants' argument that the trial court erred in denying the motion for JNOV, we conclude that the trial court did not abuse its discretion in deny defendants a new trial.

In sum, we will not substitute our judgment for that of the trial court.

Affirmed. Plaintiffs may tax costs.

/s/ Kathleen A. Feeney
/s/ Michelle M. Rick
/s/ Noah P. Hood